CITY OF CINCINNATI, APPELLEE, *v.* HOFFMAN ET AL., APPELLANTS.

164

(No. 71-424—Decided July 19, 1972.)

Mr. *William A. McClain*, city solicitor, Mr. *Ralph E. Cors* and Mr. *William P. Whalen, Jr.*, for appellee.

Mr. *Allen Brown*, Mr. *Andrew B. Dennison* and Mr. *Robert Plotkin*, for appellants.

HERBERT, J.  These arrests came amid a confrontation between demonstrators and police officers, subsequent to

the unceremonious hauling down of an American flag by someone in the crowd. As is not unusual, the evidence concerning events immediately preceding the arrests is conflicting and the testimony voluminous. Repetition here of what was maintained at the trial by one side or the other would serve no fair or useful purpose, since the jury found guilt from evidence which is legally sufficient to sustain its verdicts.

Appellants question the constitutional validity of the respective ordinances under which they were prosecuted and convicted. Appellant Brown was found guilty of violating Section 901-d4, which states:

"It shall be unlawful for any person to willfully conduct himself or herself in a noisy, boisterous, rude, insulting or other disorderly manner, with the intent to abuse or annoy any person or the citizens of the city or any portion thereof."

Brown asserts that the foregoing ordinance is vague, indefinite, overbroad and lacking in proper guidelines for enforcement, and that it is violative of the Fourteenth Amendment to the Constitution of the United States.

It is fundamental that "no man * * * be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States* v. *Harriss* (1954), 347 U. S. 612, 617. Thus, in order to comport with that concept of due process of law, a criminal statute or ordinance must be phrased in terms of readily ascertainable standards of guilt, so that men of common intelligence will not have to guess at its meaning. *Connolly* v. *General Construction Co.* (1926), 269 U. S. 385; *Palmer* v. *Euclid* (1971), 402 U. S. 544, 91 S. Ct. 1563.

In *Cincinnati* v. *Coates* (1970), 21 Ohio St. 2d 66, 255 N. E. 2d 247, a majority of this court held:

"A city ordinance making it 'unlawful for three or more persons to assemble * * * on * * * sidewalks * * * and there conduct themselves in a manner annoying to persons passing by' is not vague or uncertain but is, on its face, sufficiently clear to inform a person of common intelligence of the nature of the acts prohibited by the ordinance."

"Annoying," the majority said at page 69 in the opinion in *Coates*, "is a widely used and well understood word; it is not necessary to guess its meaning. 'Annoying' is the present participle of the transitive verb 'annoy' which means to trouble, to vex, to impede, to incommode, to provoke, to harass or to irritate."

Subsequently, however, this court's decision was reversed by the United States Supreme Court in *Coates* v. *Cincinnati* (1971), 402 U. S. 611, 29 L. Ed. 2d 214, on the ground that the ordinance was unconstitutionally vague and broad. The ordinance was held vague for the reason that it subjected the exercise of the right of assembly to an unascertainable standard, *i. e.*, "conduct that annoys some people does not annoy others." The ordinance was found overbroad in that it authorized punishment of constitutionally protected conduct, *i. e.*, the right of the people to gather in public places free from indiscriminate "enforcement of a prohibition against annoying conduct." Appellant Brown urges us to examine Section 901-d4 against the backdrop of the result in *Coates* and subsequent Supreme Court cases. See *Gooding* v. *Wilson* (1972), U. S. , 31 L. Ed. 2d 408; *Cohen* v. *California* (1971), 403 U. S. 15, 29 L. Ed. 2d 284.

In our opinion, the case at bar is readily distinguishable from *Coates*. The *Coates* ordinance simply prohibited "annoying" conduct; the instant ordinance prohibits *willful* disorderly conduct *which is performed with the intent* to abuse or annoy. The plain meaning of this ordinance, in requiring that the proscribed conduct be done with intent to abuse or annoy, is that the specified intent governs the reading of the entire section. The injection of scienter provides a precise and comprehensible standard which is well within the ability of a person of common intelligence to understand. Conduct that is willfully performed in a "noisy, boisterous, rude, insulting or other disorderly manner," is clearly chargeable to its initiator when gauged against his own preconceived intent to annoy or abuse.

We gain a considerable measure of support in this

regard from the recent decision in *Colten* v. *Kentucky* (June 12, 1972), 32 L. Ed. 2d 584.

In that case, Colten was charged with violating Ky. Rev. Stat. Section 437.016(1)(f), which states:

"(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"* * *

"(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse. * * *"

In affirming Colten's conviction, the Supreme Court quoted the following interpretation of the statute by the Kentucky Court of Appeals:

" 'As reasonably construed, the statute does not prohibit the lawful exercise of any constitutional right. We think that the plain meaning of the statute, in requiring that the proscribed conduct be done "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," is that the specified intent must be the *dominant* intent. Predominance can be determined either (1) from the fact that no bona fide intent to exercise a constitutional right appears to have existed or (2) from the fact that the interest to be advanced by the particular exercise of the constitutional right is insignificant in comparison with the inconvenience, annoyance or alarm caused by the exercise.' "

Although Colten had engaged in conduct sheltered by the First Amendment earlier on the day he was arrested, the court agreed with the finding of the Kentucky court, that "* * * at the time of his arrest, 'Colten was not undertaking to exercise any constitutionally protected freedom.' Rather, he 'appears to have had no purpose other than to cause inconvenience and annoyance. So the statute as applied here did not chill or stifle the exercise of any constitutional right.' "

Neither did the court, in *Colten*, find the statute impermissibly vague or broad. The court said:

"* * * The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it said: '*We believe that citizens who desire to obey the statute* will have no difficulty in understanding it * * *' *Colten* v. *Commonwealth*, 467 S. W. 2d 374, 378 (Ky. 1971)." (Emphasis added.)

Colten also urged the court to strike down the Kentucky statute on the authority of *Cox* v. *Louisiana* (1965), 379 U. S. 536. In that case, a breach of the peace statute was invalidated because it permitted conviction for disobedience of a police order to disperse, the order having been given because the defendant had expressed unpopular views. In answering Colten's contention, the Supreme Court said:

"As the Kentucky statute was construed by the state court * * * *a crime is committed only where there is no bona fide intention to exercise a constitutional right—in which event, by definition, the statute infringes no protected speech or conduct*—or where the interest so clearly outweighs the collective interest sought to be asserted that the latter must be deemed insubstantial. * * * *Individuals may not be convicted* under the Kentucky Statute *merely for expressing unpopular or annoying ideas.* * * *" (Emphasis added.)

We reach the same result with regard to Section 901-d4. As reasonably construed, the ordinance neither prohibits the lawful exercise of any constitutional right nor escapes the understanding of any person of "common intelligence" who desires to obey it.

Appellants Hoffman and Berliner were prosecuted and convicted under Section 901-r2 of the Code of Ordinances of the city of Cincinnati, which states, in part:

"No person shall resist, hinder, obstruct, or abuse any

police officer while such officer is engaged in the lawful performance of his duties.''

Appellants' argument that the above language is unconstitutionally vague is not well taken. However, their contentions do not rest solely upon that ground.

This ordinance purports to impose criminal liability upon any person who, under any circumstances, violates the proscription contained therein. The efficacy of the section, as a local police regulation, is derived from the power of an Ohio municipality to enact such laws under Section 3 of Article XVIII of the Ohio Constitution and is no longer dependent upon any individual legislative grant thereof. *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, 205 N. E. 2d 382. Section 3, Article XVIII, states: ''Municipalities shall have authority to * * * adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws.''

Pursuant to that constitutional mandate, this court has held that municipalities are authorized to adopt local police regulations which do not conflict with state statutes. *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, 140 N. E. 519; *Akron* v. *Scalera* (1939), 135 Ohio St. 65, 19 N. E. 2d 279; *Greenberg* v. *Cleveland* (1918), 98 Ohio St. 282, 120 N. E. 829; *Cleveland* v. *Raffa* (1968), 13 Ohio St. 2d 112, 235 N. E. 2d 138.

In the field of regulation and control, the rationale of the *Sokol* and *Scalera* cases is that, in order for such a conflict to arise, the state statute must positively permit what the ordinance prohibits, or vice versa, regardless of the extent of state regulation concerning the same object. See *Cleveland* v. *Raffa, supra*, at page 114.

Appellants urge that Section 901-r2 imposes an absolute criminal liability which is in direct conflict with a ''general law,'' *i. e.,* R. C. 2917.33, which states, in part:

''No person shall * * * knowingly and willfully resist, obstruct, or abuse a sheriff, or other officer in the execution of his office.''

The contrariety depicted by appellants concerns their view that one who unknowingly and unwillfully resists, obstructs, or abuses an officer would be innocent under the state law, but guilty under the Cincinnati ordinance. Under such a concept, and standing alone, 901-r2 does not satisfy either the federal constitutional doctrine that "awareness of what one is doing is a prerequisite for the infliction of punishment" (*Smith* v. *California* [1959], 361 U. S. 147, 162), or comport with the principles underlying the "home rule" provision of the Ohio Constitution.

In the instant case, however, 901-r2 did not stand solely on its own terms. At the close of the trial of this cause, both in a special charge and in the general charge, the jury was explicitly admonished by the trial judge to inject the Revised Code scienter standards into their deliberations on the question of liability under the Cincinnati ordinance. In the special charge, he directed as follows:

"The first special charge is as follows:

"In a violation under Section 901-r2 of the Code of Ordinances referred to as resisting an officer, unless you find beyond a reasonable doubt the person charged thereunder knew that the person he is alleged to have resisted, hindered, obstructed, or abused was in fact a police officer while such officer was engaged in the lawful performance of his duties, then you must find the defendant charged not guilty.

"The second special charge is as follows: In a violation of Section 901-r2 of the Code of Ordinances of the city of Cincinnati captioned 'Resisting an Officer,' the city is charged with the duty of proving beyond a reasonable doubt that the defendant intended to resist, hinder, obstruct or abuse any police officer while such officer was engaged in the lawful performance of his duty; such intent cannot be met by the mere proof that the person resisted, hindered, obstructed and abused was a police officer. Rather, additional evidence indicating the witting consciousness of the defendant that he was involved with a police officer while such officer was engaged in the lawful

performance of his duty, that he intended to resist, hinder, obstruct, or abuse such police officer and that he did in fact resist, hinder, obstruct or abuse such officer, must all be adduced beyond a reasonable doubt. Unless each and every one of the foregoing elements is sustained by evidence that convinces you beyond a reasonable doubt then it is your duty to find the defendant not guilty.

"Special Charge No. 3: It does not constitute resisting, hindering, obstructing or abusing a police officer under Section 901-r2 to be merely present and in the way when a police officer is engaged in the lawful performance of his duties; nor is it a violation to orally communicate dissatisfaction or disaffection for the officer while such officer is engaged in the lawful performance of his duties, unless such expression is made in such manner as to in fact be an act constituting resistance, hinderance, obstruction or abuse."

Additionally, in the general charge, the trial judge instructed the jury:

"You have previously been charged under the special charge that unless you find beyond a reasonable doubt in the resisting-an-officer charge or obstructing-an-officer charge that the person charged thereunder knew that the person he is alleged to have resisted or obstructed was in fact a police officer while such officer was engaged in the lawful performance of his duties, then you must find the defendant charged 'not guilty,' if you cannot find those situations.

"In Special Charge No. 2, which, by the way, you will have your special charges in the room when you deliberate, it is indicated that in violation of 901-r2 of the Code of Ordinances, captioned, 'Resisting an Officer,' the city is charged with the duty of proving beyond a reasonable doubt that the defendant intended to resist or obstruct while such officer was engaged in the lawful performance of his duty.

"Such intent cannot be met by the mere proof that the person resisted, hindered, obstructed and abused was a police officer. Rather, additional evidence indicating the

witting consciousness of the defendant that he was involved with a police officer while such officer was engaged in the lawful performance of his duty, that he intended to resist, hinder, obstruct or abuse such police officer and that he did in fact resist, hinder, obstruct or abuse such police officer. This must be adduced beyond a reasonable doubt.

"Now, in regard to the intent in those charges of resisting an officer or obstructing an officer and with regard to the intent necessary in the charge against Michele Brown for disorderly conduct and against Joyce Reichman for boisterous conduct, I will indicate to you the following: That the intent in these charges is an essential element. Intent is a decision of the mind to knowingly do an act with a conscious objective of accomplishing a specific result."

It is a well-established principle of law that a statute may operate unconstitutionally under one application, but validly under another. *Dahnke-Walker Milling Co.* v. *Bondurant* (1921), 257 U. S. 282; *Alabama State Federation of Labor* v. *McAdory* (1945), 325 U. S. 450; *State, ex rel. Herbert,* v. *Ferguson* (1944), 142 Ohio St. 496, 52 N. E. 2d 980; *State* v. *Wetzel* (1962), 173 Ohio St. 16, 179 N. E. 2d 773. In *State, ex rel. Herbert,* v. *Ferguson,* it was held that, "Where, under one state of facts, the operation of a statute is constitutional, a court will not declare it invalid because under another state of facts, not involved, its operation would be unconstitutional."

Furthermore, in construing a statute, judicial limitations placed upon the written text are as important as the text itself in terms of prosecution and conviction under the relevant sections. See *State* v. *Jacobellis* (1962), 173 Ohio St. 22, 179 N. E. 2d 777, reversed on other grounds, *Jacobellis* v. *Ohio* (1964), 378 U. S. 184; *State* v. *Saylor* (1966), 6 Ohio St. 2d 139, 216 N. E. 2d 622. Thus, the syllabus of *State* v. *Ross* (1967), 12 Ohio St. 2d 37, 231 N. E. 2d 299, which was before this court upon a demurrer to an indictment, states:

"Where a criminal statute does not clearly make a

certain specific intent an element of the offense, but judicial interpretation has made such intent a necessary element, an indictment charging the offense solely in the language of the statute is insufficient. (Sections 2941.05 and 2905.34, Revised Code.)''

And, at page 39 in the opinion in *Ross*:

''The result of this judicial limitation is that the crime has an element of specific intent which is not found within the literal words of the statute. * * *

''* * * Even if the statute specifically provided that the statutory language would always be sufficient, the courts might *still* require more to put the defendant on notice of the offense charged. Code of Georgia, Section 27-701; *Barton* v. *State*, 79 Ga. App. 380, 53 S. E. 2d 707; *Stone* v. *State*, 76 Ga. App. 96, 45 S. E. 2d 89.''

Under the careful, curative charge to the jury in this case, the ordinance was fully and clearly extended to contain all the elements of the crime as set out in R. C. 2917.33. Hence, under the facts at bar, the ordinance was properly employed and escaped the conflict alleged.*

We find no reversible error in the selection of the jury in this cause (see *Hoyt* v. *Florida* [1961], 368 U. S. 57) and do not find that the trial court abused its discretion in denying the motions for change of venue.

*Judgments affirmed.*

O'NEILL, C. J., SCHNEIDER, KERNS, STERN and LEACH, JJ., concur.

BROWN, J., dissents.

KERNS, J., of the Second Appellate District, sitting for CORRIGAN, J.

---

*In actuality, the prosecution was the party most likely to be prejudiced by the absence of scienter in the ordinance. *Cf. State* v. *Stanton* (1968), 15 Ohio St. 2d 215, 239 N. E. 2d 92. Its burden of proof was

174

Brown, J., dissenting. The majority of the court relies on the recently announced decision in *Colten* v. *Kentucky* (1972), 32 L. Ed. 2d 584. There, the Supreme Court upheld the validity of a conviction under Ky. Rev. Stat. Section 437.016 (1) (f) (Cum. Supp. 1968), which states:

"(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse * * * ."

The Supreme Court found that the Kentucky statute "* * * authorized conviction for refusing to disperse with the intent of causing inconvenience, annoyance, or alarm. Any person who stands along in a group of persons along a highway where the police are investigating a traffic violation and seeks to engage the attention of an officer issuing a summons should understand that he could be convicted under subdivision (f) of Kentucky's state statute if he fails to obey an order to move on. * * * I agree with the Kentucky court when it said 'We believe that citizens who desire to obey the statute will have no difficulty in understanding it * * *.' "

The statute was upheld because (1) the type of *conduct* proscribed in part (f) specifically provided an ascertainable standard of guilt so that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed," and (2) "a crime is committed only where there is no *bona fide* intention to exercise a constitutional right. * * * Individuals may not

---

increased, under the court's charge, beyond that for which it would have logically prepared under the literal terms of the ordinance. However, the record reflects that pre-trial discussions between the court and all counsel encompassed the question of whether the word "unlawfully," contained in the affidavits, necessarily included the element of *mens rea*. The record shows further that both the prosecution and defense proceeded upon the assumption that the charges did include that salient ingredient, as is shown by the testimony and special instructions requested by the defense and given by the court.

be convicted under the Kentucky statute merely for expressing unpopular or annoying ideas."

Section 901-d4 of the Code of Ordinances of the City of Cincinnati, entitled "Disorderly Conduct," provides:

"It shall be unlawful for any person to willfully conduct himself or herself in a noisy, boisterous, rude, insulting, or other disorderly manner, with the intent to abuse or annoy any person or the citizens of the city or any portion thereof."

It is my view that in accordance with the above standards, the Cincinnati ordinance in question (as opposed to the Kentucky Statute) does not provide sufficient fair warning to the public nor certainty of interpretation by courts and juries as to what constitutes illegal conduct, and may infringe upon the *bona fide* intentional exercise of constitutionally protected rights.

A disorderly person is defined under the Cincinnati ordinance as one who acts in a "noisy, boisterous, rude, insulting or other disorderly manner." In considering this language it should be kept in mind that "the Constitution does not bar enactment of laws regulating conduct, even though connected with speech, press, assembly, and petition, if such laws specifically bar only the conduct deemed obnoxious and are carefully and narrowly aimed at that forbidden conduct." Concurring opinion of Justice Black, *Gregory* v. *City of Chicago* (1969), 394 U. S. 111, 118, and also see *Cox* v. *Louisiana, supra* (379 U. S. 536). However, the terms "noisy" and "boisterous" by themselves are insufficiently narrow and may infringe upon the exercise of constitutionally protected rights.

" * * * statutes or ordinances prohibiting 'noise' are valid only to the extent that they are necessary to the protection of other important public interest, e. g., the prohibition of horn blowing or other noise in a hospital zone. Prohibition of noise *per se* is unconstitutional." *Landry* v. *Daley* (1968), 280 F. Supp. 968, cited with approval in *Gardner* v. *Ceci* (1970), 312 F. Supp. 516. See also, *Edwards* v. *South Carolina* (1963), 372 U. S. 229.

A political speech by the presidential candidate of a major party may be both "noisy" and "boisterous", and even "rude" and "insulting", and may be given with *the intent to annoy the* opposition party, yet which one of us would seriously consider prosecuting him for disorderly conduct. Yet, under the ordinance the candidate would be guilty of disorderly conduct. This example points up two of the inherent dangers of such a vague and overbroad ordinance: (1) selective enforcement against only unpopular conduct but not against popular causes, and (2) making criminal rightful acts (such as political campaigning).

The description of proscribed conduct in the Cincinnati ordinance concludes with the catch-all phrase "* * * or other disorderly manner." Standing alone, such a broad description of criminal conduct would be patently unconstitutional. See *Edwards* v. *South Carolina* (1963), 372 U. S. 229, *supra;* and *Terminiello* v. *City of Chicago* (1949), 337 U. S. 1, where narrower ordinances were condemned by the Supreme Court. Even after construing this vague residual phrase in its most favorable constitutional interpretation, that is, as denoting behavior similar to the immediately preceding enumerated conduct, I still find it lacking in specificity and objectivity.

The requirement that criminal offenses be defined with appropriate definiteness (*United States* v. *Cardiff* (1952), 344 U. S. 174), which was a fundamental concept of the common law (*Pierce* v. *United States* (1941), 314 U. S. 306), is today universally regarded to be an essential element of due process of law under the Constitution of the United States (*Connolly* v. *General Constr. Co.* [1926], 269 U. S. 385; *Columbus* v. *Thompson* [1971], 25 Ohio St. 2d 26; *Cincinnati* v. *Coates* [1970], 21 Ohio St. 2d 66: *Columbus* v. *DeLong* [1962], 173 Ohio St. 81). This concept, which is necessary in a democracy, dictates that no man be held criminally responsible for conduct which could not be reasonably understood to be proscribed (*United States* v. *Harriss* [1954], 347 U. S. 612; *Scull* v. *Virginia* [1959], 359 U. S. 344; *Colten* v. *Kentucky, supra,*

and no obedience may be exacted to a law so vague and indefinite as to be no rule or standard at all (*Champlin Refining Co.* v. *Corporation Com.* [1932], 286 U. S. 210), for such a law constitutes an invitation to engage in selective enforcement which may have a "chilling effect" on activities protected under the Constitution. *Dombrowski* v. *Pfister* (1965), 380 U. S. 479. See *Winters* v. *New York* (1948), 333 U. S. 507. Reasonable certainty in criminal enactments is all the more essential when vagueness might induce individuals to forego their rights of speech, press, and association for fear of violating an unclear law. See annotation, 16 L. Ed. 2d 1231, 1234. Such vagueness is unconstitutional, not only because it fails to warn a person that his behavior may be criminal, but also because it compels enforcement officers, as well, to guess at what violates the law, thus either setting the stage for arbitrary police action, or, if police and prosecutors evolve their own set of rational standards of enforcement, constituting an inappropriate delegation of criminal lawmaking authority (see *Scott* v. *District Attorney* [1970], 309 F. Supp. 833, 836, cited with approval, *Severson* v. *Duff* [1970], 322 F. Supp. 4). Even "well-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law." (*Baggett* v. *Bullitt* [1964], 377 U. S. 360, 373.)

With regard to the doctrine of overbreadth, in *N. A. A. C. P.* v. *Alabama, ex rel. Flowers* (1964), 377 U. S. 288, 307, the U. S. Supreme Court has said: "This court has repeatedly held that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." See also *Cox* v. *Louisiana* (1965), 379 U. S. 536. The ultimate danger of overbreadth is that it "licenses the jury to create its own standard in each case." See *Herndon* v. *Lowry* (1937), 301 U. S. 242, at 263.

If such statutes are on their face repugnant to due process of law because of vagueness or overbreadth, a reviewing court is obligated to invalidate them and the con-

178

victions in the court below, irrespective of the acts of the defendants, for this nation has rightly held long ago that "illegal" laws constitute as great a potential danger to society as do the allegedly illegal acts committed in violation of them. There can be no greater "crime" than to allow the continued existence of a statute so vague on its face that it may make criminal an innocent and lawful act of expression or action. "It is the ordinance on its face that sets the standard of conduct and warns against transgression. The details of the offense could no more serve to validate the ordinance than could the details of an offense charged under an ordinance suspending unconditionally the right of assembly and free speech." *Coates* v. *Cincinnati* (1971), 402 U. S. 611, 616. See also *Winters* v. *New York,* *supra* (333 U. S. 507). In accord, we need not judge the propriety of defendants' acts on the day in question.

I now turn to consider the validity of Section 901-r2 of the Code of Ordinances of the City of Cincinnati, entitled "Resisting an Officer."

At any time an ordinance on its face conflicts with a state statute which requires knowledge, such ordinance can not be cured by a special instruction to the jury as to *mens rea.*

It is the ordinance which defines the crime, it is the ordinance under which citizens are held accountable, and "it is the ordinance *on its face* that sets the standard of conduct and warns agains transgression" * * *. *Coates* v. *Cincinnati* (1971), 402 U. S. 611, 616. See also *Winters* v. *New York, supra* (333 U. S. 507). (Emphasis supplied.)

Ordinance 901-r2 provides:

"No person shall resist, hinder, obstruct, or abuse any police officer while such officer is engaged in the lawful performance of his duties.

"Whoever violates this provision shall be imprisoned in the Workhouse for a period of not more than one (1) year, or fined not more than five thousand dollars ($5,000), or both."

Appellants Hoffman and Berliner assert that the ab-

sence of scienter (knowingly and willfully resisting, hindering, obstructing or abusing any police officer) renders the ordinance, on its face, violative of Section 3, Article XVIII of the Ohio Constitution, in light of the fact that the corresponding state statute, R. C. 2917.33, requires scienter.

The power of any Ohio municipality to enact local police regulations is derived directly from Section 3 of Article XVIII of the Ohio Constitution and is no longer dependent upon any legislative grant thereof, as it was prior to the adoption in 1912 of that section of the Constitution. *Village of West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113. Section 3, Article XVIII, states that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws." Thus, police and similar regulations under the powers of local self-government so established by the Constitution must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over the police and similar regulations in the exercise by a municipality of the powers of local self-government. *State, ex rel. Klapp,* v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14.

In *Fitzgerald* v. *Cleveland* (1913), 88 Ohio St. 338, 359, it was early stated that general laws are such as:

" * * *relate to police, sanitary and other similar regulations, and which apply uniformly throughout the state * * * for the peace, health and safety of all of its people, wholly separate and distinct from, and without reference to, any of its political subdivisions—such as regulate the morals of the people, the purity of their food, the protection of the streams, the safety of buildings and similar matters."

It is this flexible line of distinction between internal functions and power that the courts of this state have been

most firmly committed through the years, despite occasional strains and misgivings. See "Municipal Corporations and the Police Power in Ohio," 29 Ohio St. L. J. 29, 31. Within the constitutional term "police regulations," municipal powers are—so long as not in conflict with "general laws" and so long as confined to within the territorial limits of the municipality—as broad as that of the state. *Cleveland Tel. Co.* v. *Cleveland* (1918), 98 Ohio St. 358; *Benjamin* v. *Columbus* (1957), 167 Ohio St..103. However, such municipal police regulations must be reasonable (*Froelich* v. *Cleveland* (1919) 99 Ohio St. 376), both to come properly within municipal power and to comport with due process and equal protection provisions of the state and federal constitutions. The means adopted to achieve valid municipal objectives must be suitable to those ends, and must have a real and substantial relationship to their purpose (see *Leet* v. *Eastlake* (1966), 7 Ohio App. 2d 218). The means must not be unduly oppressive to the individual, nor interfere with the private rights beyond the necessities of the situation. (*Froelich* v. *Cleveland, supra* [99 Ohio St. 376].)

For many years the test for determining whether an ordinance is in conflict with general laws has seemingly been whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa. *Struthers* v. *Sokol* (1923), 108 Ohio St. 263. There could be no conflict unless one authority permitted an act which was forbidden or prohibited by the other. Under *Sokol* the courts have become involved in the task of interpretation to determine if the ordinance does in fact permit what the statute prohibits, or, as more appropriate to the present inquiry, forbid what the statute permits.

But the *Sokol* test is not exclusive. *Cleveland* v. *Betts* (1958), 168 Ohio St. 386. One alternative in defining "conflict" is to hold that where the state criminal statute covers the same subject matter as the municipal ordinance, the ordinance is void, it attempts in substance to modify the statute. This rule would have application where the

General Assembly could have prohibited an act, here non-willful unknowing resistance, by deleting an element of a crime—scienter—but did not. An implied right to do an act not expressly prohibited by the state has thus accrued, and a municipality has no right to modify a state criminal statute of general application. The rationale for such a policy is the need for uniformity in criminal law. See The Status of the Police Power of Ohio Municipalities to Enact Criminal Ordinances, 14 W. R. L. Rev. 786, 788.

This view has been manifested in the area of felonious crimes, where in many jurisdictions it has been generally viewed that felonies cannot be dealt with by ordinances under general powers since they are regarded as of state-wide and not local concern. See 6 McQuillan, Municipal Corporations, 418, Section 23.06. Likewise, the power to define serious crimes is not a power of home rule in Ohio. See paragraph one of the syllabus in *State* v. *O'Mara* (1922), 105 Ohio St. 94, approved in *Steele* v. *State*, 121 Ohio St. 332; Local Government Law—Municipal Power to Define Crimes, 13 Ohio St. L. J. 111; Home Rule Powers in Theory and Practice, 9 Ohio St. L. J. 18, 68; 14 W. R. L. Rev. 786, 796.

Police and similar regulations under the powers of local self-government established by the Constitution of Ohio must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations in the exercise by a municipality of the powers of local self-government. Paragraph one of the syllabus in *State, ex rel. Klapp,* v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14; *Beacon Journal Publishing Co.* v. *Akron* (1965), 3 Ohio St. 2d 191, 195; *Cleveland Telephone Co.* v. *Cleveland* (1918), 98 Ohio St. 358; *State, ex rel. Arey,* v. *Sherrill* (1944), 142 Ohio St. 574.

R. C. 2917.33 provides, in pertinent part:

"No person shall * * * knowingly and willfully resist, obstruct, or abuse a sheriff, or other officer in the execution of his office."

182

Thus, under R. C. 2917.33, a person who *unknowingly* and unwillfully resists, obstructs or abuses an officer is innocent, whereas, under the Cincinnati ordinance he would be guilty.

The absence of the element of scienter from Cincinnati Ordinance 901-r2 is in conflict with R. C. 2917.33, a law of general application applied uniformly throughout the state, which general law specifically requires that a person must both *know* that he is interfering with an officer and he must *intend* to so interfere. Where both the state and municipality attempt to delinate essentially the same crime, the latter's omission of the significant element of scienter may transform conduct which is unlawful under state law (here unintentional or unknowing resistance) into a crime under city law. Thus, the ordinance prohibits what the statute permits (see *Sokol, supra*) and in so doing contravenes the expressed policy of the state with respect to the requirement of scienter in this particular crime. Cf. *Cleveland* v. *Betts, supra* (168 Ohio St. 386, 389).

For the foregoing reasons, I would reverse the judgment of the Court of Appeals.