THE STATE EX REL. KING ET AL., APPELLEES, *v.* SUMMIT
COUNTY COUNCIL ET AL., APPELLANTS.

[Cite as *State ex rel. King v. Summit Cty. Council,*
99 Ohio St.3d 172, 2003-Ohio-3050.]

(No. 2003–0023—Submitted May 13, 2003—Decided June 25, 2003.)

**Per Curiam.**

{¶ 1} In May 2001, appellant Summit County Council adopted a resolution to submit a proposed Summit County Charter amendment to county electors at the November 6, 2001 general election. This proposal, designated as Issue 2 on the election ballot, sought to amend the charter by transferring the county auditor's powers and duties to the county treasurer, who would be renamed the county fiscal officer. Issue 2 also specified the qualifications for the county fiscal officer as being an elector of the county and not holding or accepting other employment or public office:

{¶ 2} "Election. The County Fiscal Officer shall be elected beginning at the general election held in the County in 2004 and shall hold office for a term of four years commencing on the first day of January next following such election. *Any candidate for election as County Fiscal Officer shall be an elector of the County at the time of the declaration of candidacy,* shall be nominated and elected in the manner provided by the general law for county officers *and during the entire term of office shall remain an elector of the County and shall not, except as authorized by County Council, hold or accept other employment or public office."* (Emphasis added.)

{¶ 3} Appellees, Summit County Council Member Michael J. King, Kristina L. Vickers, and Brian K. Hatfield, who are all Summit County electors and residents, proposed a substantially similar charter amendment, which specified that the county fiscal officer must be a certified public accountant ("C.P.A."). This amendment was designated as Issue 4 on the November 6, 2001 election ballot. The language of Issue 4 adding the C.P.A. requirement provided:

{¶ 4} "* * *

{¶ 5} "(2) County Fiscal Officer.

{¶ 6} "* * *

{¶ 7} "(c) Election.  The County Fiscal Officer shall be elected beginning at the general election held in the County in 2004 and shall hold office for a term of four years commencing on the first day of January next following such election. *Any candidate for election as County Fiscal Officer shall be* an elector of this County and *a Certified Public Accountant at the time of the declaration of candidacy,* shall be nominated and elected in the manner provided by general law for county officers and during the entire term of office shall remain an elector of the County and shall not, except as authorized by County Council, hold or accept any other employment or public office.

{¶ 8} "(d) Vacancy.  In the event the Office of County Fiscal Officer becomes vacant * * * the position shall be filled as provided by general law for elected officers, *provided that no person shall hold the office of County Fiscal Officer who is not a Certified Public Accountant.*

{¶ 9} "* * *

{¶ 10} "(g) *Eligibility for candidacy for the Office of County Fiscal Officer. No person shall be eligible as a candidate for the office of County Fiscal Officer or shall be elected or appointed to such office unless such a person is a Certified Public Accountant.*"  (Emphasis added.)

{¶ 11} Proponents of Issue 4 recommended that electors vote against Issue 2 because its passage would "lower professional qualifications" for the new county fiscal officer.  On the November 6, 2001 ballot, however, the issues were not presented as competing alternatives:

## "2  PROPOSED CHARTER AMENDMENT
### SUMMIT COUNTY
**A majority affirmative vote is necessary for passage.**

{¶ 12} "Shall the County Charter be amended to consolidate the Office of County Auditor with the County Treasurer and transfer its powers and duties to the County Treasurer, to be renamed 'County Fiscal Officer,' effective upon a vacancy in the county Auditor's office or on March 10, 2003, whichever is earlier?"

## "4  PROPOSED CHARTER AMENDMENT
### SUMMIT COUNTY
**A majority affirmative vote is necessary for passage.**

{¶ 13} "Shall Sections 2.03(11), 3.03(10), 4.01, 9.01, 10.01 of the Summit County Charter be amended to consolidate the Office of County Auditor with the County

Treasurer and transfer its powers and duties to the County Treasurer, to be renamed 'County Fiscal Officer,' *and provide that no person shall be eligible as a candidate for the office of County Fiscal Officer or shall be elected or appointed to such office unless such person is a Certified Public Accountant,* effective upon a vacancy in the County Auditor's office or on March 10, 2003, whichever is earlier?" (Emphasis added.)

{¶ 14} At the November 6, 2001 election, both issues passed. Issue 2, however, received a higher affirmative vote than Issue 4. Issue 2 received 60,623 votes, or 52.59 percent, in its favor, and Issue 4 received 56,693 votes, or 50.52 percent, in its favor.

{¶ 15} King subsequently requested an opinion from Summit County Prosecuting Attorney Sherri Bevan Walsh concerning the legal effect of the election results. Walsh advised that only Issue 2 was controlling and should be codified. She concluded that under Section 4, Article X of the Ohio Constitution, Issue 2 conflicted with Issue 4 regarding the qualifications for county fiscal officer and because it received more votes than Issue 4, Issue 2 prevailed. In March 2002, Summit County Council enacted Ordinance 2002–084, effective April 3, 2002, which adopted Issue 2 as an amendment to the county charter. King voted against the codification of Issue 2.

{¶ 16} Two months later, in May 2002, appellees demanded that Walsh "take appropriate legal action" to implement Issue 4, including its requirement that the county fiscal officer be a C.P.A. On May 6, 2002, Walsh denied appellees' request. On June 12, 2002, the county auditor notified the Summit County Council that he was resigning effective June 15. The county treasurer then took office as the first Summit County Fiscal Officer.

{¶ 17} On June 13, 2002, appellees filed a complaint for a writ of mandamus and an R.C. 309.13 taxpayers' suit in the Court of Appeals for Summit County. Appellees requested a writ of mandamus to compel appellees, Summit County Council, its clerk, and the Summit County Executive, as well as Walsh, to implement Issue 4 as a valid Summit County Charter amendment. Appellees also requested a writ of mandamus compelling these named respondents and the county fiscal officer to perform their duties consistent with the approved issues and to comply with the charter amendment's C.P.A. requirement. Appellees further requested an award of costs and attorney fees.

{¶ 18} In December 2002, the court of appeals granted appellees a writ of mandamus to compel the Summit County Council, its clerk, and the Summit County Executive to implement Issue 4 as an amendment to the Summit County Charter. The court of appeals denied the remainder of appellees' claims, including their R.C. 309.13 taxpayers' claim and their claims against the county prosecutor and the county fiscal officer.

{¶ 19} This cause is now before the court upon the appeal as of right of the county council, its clerk, and the county executive.

## Striking the Reply Brief

{¶ 20} Appellants correctly assert that the court of appeals erred in striking their November 27, 2002 reply brief in support of their summary judgment motion.

{¶ 21} The court of appeals sua sponte struck appellants' reply brief on the stated basis that it had earlier ordered that each side file one summary judgment motion and one brief in opposition to the other side's motion, with no further reply briefs to be considered. A review of the court's previous entry, however, establishes that appellants' reply brief *was* permitted:

{¶ 22} "Respondents shall respond to Relators' motion for summary judgment and may move to dismiss and/or move for summary judgment * * *. Relators may respond to a dispositive motion filed by Respondents within twenty days of service of the motion upon them. *Both parties may file one reply brief to address new matters raised in the opposing parties' memoranda against any dispositive motions filed.* No further reply briefs will be considered." (Emphasis added.)

{¶ 23} Appellees claim that the reply brief did not concern new matters. But the court of appeals did not rely on this basis to strike the reply brief.

{¶ 24} Therefore, the court of appeals abused its discretion by striking appellants' reply brief. Nevertheless, this error would not necessarily prejudice appellants if their substantive contentions lack merit. See *State ex rel. Gabriel v. Youngstown* (1996), 75 Ohio St.3d 618, 619, 665 N.E.2d 209, quoting *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus. Consequently, we must examine appellees' mandamus claim to determine whether the court of appeals correctly granted the writ. *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, at ¶ 19.

## Laches

{¶ 25} Appellants contend that by delaying more than eight months after the November 6, 2001 election to file their mandamus action in the court of appeals, laches barred their claim. We have held that "[t]he public interest in having election cases decided even * * * after an election has already been held, requires extreme promptitude." *State ex rel. Commt. for the Referendum of Lorain Ord. No. 77–01 v. Lorain Cty. Bd. of Elections,* 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 26; *In re Election of Member of Rock Hill Bd. of*

*Edn.* (1996), 76 Ohio St.3d 601, 606–607, 669 N.E.2d 1116; *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 650 N.E.2d 859.

{¶ 26} These cases lack relevance because they involve either disputes concerning sealed election results where it is unclear whether the election should have occurred, see, e.g., *State ex rel. Commt for the Referendum of Lorain Ord. No. 77–01*, or an election contest under R.C. 3515.10, *In re Election of Member of Rock Hill Bd. of Edn.*

{¶ 27} Moreover, the remaining election cases cited by appellants in support of their laches claim involve an imminent election. See, e.g., *State ex rel Carberry v. Ashtabula* (2001), 93 Ohio St.3d 522, 757 N.E.2d 307.

{¶ 28} By contrast, this case does not involve any pending election or claim that issues should not have been placed on an election ballot. The placement of Issue 2 and Issue 4 on the November 6, 2001 election ballot and the resulting vote are not at issue. Instead, this case concerns the legal effect of both issues receiving more than a majority of votes at the same election.

{¶ 29} Unlike most of the election cases cited by appellants, no statutory deadline passed that prejudiced the rights of absentee voters. Cf. *Carberry*, 93 Ohio St.3d at 524, 757 N.E.2d 307. In addition, there is no discernible prejudice to appellants' ability to defend against appellees' mandamus claim. *State ex rel. Roadway Express v. Indus. Comm.* (1998), 82 Ohio St.3d 510, 514, 696 N.E.2d 1064 (for laches to apply, "prejudice is ordinarily represented by a respondent's inability to defend due to the passage of time").

{¶ 30} Therefore, the court of appeals correctly held that laches did not bar appellees' mandamus claim.

### Conflicting Charter Amendment Provisions

{¶ 31} Appellants assert that the court of appeals erred in granting the writ of mandamus compelling them to implement Issue 4 as a charter amendment. Appellants claim that under Section 4, Article X of the Ohio Constitution, Issue 4 conflicted with Issue 2 and Issue 2 prevailed because it received more votes at the November 6, 2001 election.

{¶ 32} Section 4, Article X of the Ohio Constitution specifies the exact solution to the simultaneous passage of conflicting county charter amendments:

{¶ 33} "[I]n case of conflict between the provisions of two or more amendments submitted at the same time, that * * * provision *shall prevail which received the highest affirmative vote,* not less than a majority." (Emphasis added.)

{¶ 34} The dispositive issue here is whether Issue 2 and Issue 4 *conflicted* concerning the C.P.A. requirement of Issue 4. This issue is dependent upon the meaning of the word "conflict" in Section 4, Article X of the Ohio Constitution.

Appellees argue and the court of appeals held that there was no conflict, and so Issue 4 should have been codified as a valid, complementary charter amendment.

{¶ 35} "The first step in determining the meaning of a constitutional provision is to look at the language of the provision itself." *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 520, 644 N.E.2d 369. "Words used in the Constitution that are not defined therein must be taken in their usual, normal, or customary meaning." *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 480, 481, 692 N.E.2d 560; *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 542, 697 N.E.2d 181.

{¶ 36} The usual, normal, or customary meaning of "conflict" is "clash, competition, or mutual interference of opposing or incompatible forces or qualities * * *: antagonism." Webster's Third New International Dictionary (1986) 476; see, also, *State ex rel. Saxbe v. Brand* (1964), 176 Ohio St. 44, 26 O.O.2d 309, 197 N.E.2d 328 (court uses dictionary definitions to determine meaning of undefined constitutional language).

{¶ 37} In interpreting "conflict" in a separate constitutional provision,[1] we acknowledged the dictionary definition and held that the test is whether one provision permits that which the other provision forbids, and vice versa:

{¶ 38} "In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph two of the syllabus; see, also, *State v. Burnett* (2001), 93 Ohio St.3d 419, 431, 755 N.E.2d 857; *Sheffield v. Rowland* (1999), 87 Ohio St.3d 9, 11, 716 N.E.2d 1121.

{¶ 39} In applying the *Struthers* test, we have further observed that "in order for such a conflict to arise, the [provision] must *positively permit* what the [other provision] prohibits." (Emphasis added.) *Cincinnati v. Hoffman* (1972), 31 Ohio St.2d 163, 169, 60 O.O.2d 117, 285 N.E.2d 714.

{¶ 40} Applying this test here, Issue 2 and Issue 4 are virtually identical except that Issue 4 adds the C.P.A. qualification requirement for county fiscal officer, while Issue 2 is silent on this additional qualification. Therefore, Issue 2 does not positively permit that which Issue 4 expressly prohibits, nor does Issue 2 forbid that which Issue 4 expressly allows.

{¶ 41} In reaching a similar result, the Franklin County Court of Appeals held that a Columbus ethnic-intimidation ordinance did not conflict with the state

---

1. Section 3, Article XVIII of the Ohio Constitution provides, "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in *conflict* with general laws." (Emphasis added.)

ethnic-intimidation statute, although the city ordinance prohibited conduct on the basis of sexual orientation while the statute did not:

{¶ 42} "Columbus City Code 2331.08(A) is not in conflict with the general law. R.C. 2927.12 is the general law prohibiting ethnic intimidation. The state statute is in all material respects identical to the Columbus ordinance proscribing the same conduct except that the city ordinance forbids conduct on the basis of sexual orientation, while the state statute is silent on sexual orientation. The city ordinance does not permit that which the state forbids nor does it prohibit that which the state expressly allows." *Columbus v. Spingola* (2001), 144 Ohio App.3d 76, 81, 759 N.E.2d 473, appeal not allowed (2001), 93 Ohio St.3d 1447, 756 N.E.2d 112.

{¶ 43} Moreover, our conclusion is consistent with our duty to harmonize charter amendments whenever possible. See, e.g., *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 597, 599, 622 N.E.2d 329.

{¶ 44} Finally, we are persuaded that our interpretation best effectuates the will of the majority of the electors who cast votes at the November 6, 2001 election when the ballot did not specifically present the issues as competing alternatives. See, e.g., *Yoshisato v. Orange Cty. Superior Court* (1992), 2 Cal.4th 978, 988–989, 9 Cal.Reptr.2d 102, 831 P.2d 327.

## Conclusion

{¶ 45} Based on the foregoing, the court of appeals properly granted the writ of mandamus ordering appellants to implement Issue 4 as an amendment to the Summit County Charter. Appellants had a clear legal duty under Section 4, Article X of the Ohio Constitution to do so. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

O'DONNELL, J., not participating.

---

Hahn, Loeser & Parks, L.L.P., Stephen E. Chappelear, Andrew S. Pollis and Erica L. Calderas, for appellants.

Amer Cunningham Co., L.P.A., Betty J. Konen, Jack Morrison Jr., and Mark G. Stasitis, for appellees.