THE STATE EX REL. BEANE ET AL. *v.* CITY OF DAYTON ET AL.

[Cite as *State ex rel. Beane v. Dayton,*
112 Ohio St.3d 553, 2007-Ohio-811.]

(No. 2006–1929—Submitted January 9, 2007—Decided March 14, 2007.)

———————

Per Curiam.

{¶ 1} This is an original action for a writ of mandamus filed by relators, Captain John C. Post Lodge No. 44 of the Fraternal Order of Police and Randy Beane, a member, to compel respondents, the city of Dayton, the Dayton City Commission, the Dayton Civil Service Board, and various city officials, to comply with R.C. 9.481, a recently enacted statute prohibiting political subdivisions from requiring their employees, as a condition of employment, to reside in any specific area of the state. For the following reasons, we grant respondents' motion and dismiss the cause.

## Dayton Charter

{¶ 2} Effective March 24, 1987, the electorate of respondent city of Dayton adopted an amendment to Section 102, Article X of the Dayton Charter that provides a residency requirement for city employees:

{¶ 3} "(A) All employees in the Civil Service of the City of Dayton, appointed after the effective date of this Charter section, must and shall be actual residents of and physically live in the City of Dayton at the time of their appointment, and shall continue to be actual residents and physically live in the City of Dayton during the term of their employment.

{¶ 4} "(B) All employees in the Civil Service of the City of Dayton, required by Ordinance No. 25558, dated June 28, 1978, and/or personnel regulations, including, but not specifically limited to, Personnel Policies and Procedures Manual § 2.01, originally adopted June 28, 1978, as § 9.10 and revisions thereof, to have actual residence and physically live in the City of Dayton at the time of the effective date of this Charter section shall and must continue to be actual residents of and physically live in the City of Dayton during the term of their employment.

{¶ 5} "(C) Irrespective and notwithstanding any other provision of this Charter, violation of the provisions of this section shall result in discharge.

{¶ 6} "(D) The Commission may enact such ordinances as may be necessary and consistent with implementation of this section."

## R.C. 9.481

{¶ 7} In January 2006, the General Assembly enacted R.C. 9.481, which generally prohibits political subdivisions from imposing residency requirements on employees. R.C. 9.481 provides:

{¶ 8} "(B)(1) Except as otherwise provided in division (B)(2) of this section, no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state.

{¶ 9} "(2)(a) Division (B)(1) of this section does not apply to a volunteer.

{¶ 10} "(b) To ensure adequate response times by certain employees of political subdivisions to emergencies or disasters while ensuring that those employees generally are free to reside throughout the state, the electors of any political subdivision may file an initiative petition to submit a local law to the electorate, or the legislative authority of the political subdivision may adopt an ordinance or resolution, that requires any individual employed by that political subdivision, as a condition of employment, to reside either in the county where the political subdivision is located or in any adjacent county in this state. * * *

{¶ 11} "(c) Except as otherwise provided in division (B)(2) of this section, employees of political subdivisions of this state have the right to reside any place they desire."

{¶ 12} In 2006 Sub.S.B. No. 82 ("S.B. 82"), which enacted the statute, the General Assembly made the following declaration and findings to support R.C. 9.481:

{¶ 13} "SECTION 2. In enacting section 9.481 of the Revised Code in this act, the General Assembly hereby declares its intent to recognize both of the following:

{¶ 14} "(A) The inalienable and fundamental right of an individual to choose where to live pursuant to Section 1 of Article I, Ohio Constitution.

{¶ 15} "(B) Section 34 of Article II, Ohio Constitution, specifies that laws may be passed providing for the comfort, health, safety, and general welfare of all employees, and that no other provision of the Ohio Constitution impairs or limits this power, including Section 3 or Article XVIII, Ohio Constitution.

{¶ 16} "SECTION 3. The General Assembly finds, in enacting section 9.481 of the Revised Code in this act, that it is a matter of statewide concern to generally allow the employees of Ohio's political subdivisions to choose where to live, and that it is necessary to generally prohibit political subdivisions from requiring their employees, as a condition of employment, to reside in any specific area of the state in order to provide for the comfort, health, safety, and general welfare of those public employees."

{¶ 17} The effective date of R.C. 9.481 is May 1, 2006. See S.B. 82.

### Refusal of Respondents to Comply with R.C. 9.481

{¶ 18} After the passage of S.B. 82, respondent Dayton Mayor Rhine L. McLin issued a letter dated January 30, 2006, to city employees informing them that the city would continue to enforce its charter residency requirement and that the city considered the enactment of R.C. 9.481 to be unconstitutional:

{¶ 19} "As you may have read, the Ohio General Assembly recently passed, and the Governor signed, a state law purportedly prohibiting cities such as Dayton from requiring employees to live within the City as a condition of employment. At some point in the future, we expect the constitutionality of this law will be determined by the Ohio Supreme Court.

{¶ 20} "This letter is to inform you that the Dayton City Commission has passed an Informal Resolution opposing such action by the State. In addition, the members of the City Commission are unanimous in their direction to the City Manager to continue enforcing and defending the requirements of Dayton's Residency Rule. This means **there is no change in the City's policy of hiring employees who are in compliance with the Rule and terminating all employees who violate the Rule.**

{¶ 21} "Dayton is granted 'Home Rule' powers under the State Constitution that allows [sic] the City to adopt its own Charter and enact local laws that meet the needs of the Dayton community. The City Commission firmly believes the action by the State of Ohio violates our 'Home Rule' authority and conflicts with the State Constitution. In addition, the residents of Dayton overwhelmingly voted *in favor* of the Residency requirement when the issue was put on the ballot in 1987. They understood that the Residency Rule serves the best interest of all Dayton residents by providing timely and efficient employee service and maintaining neighborhood stability. The action by uninformed and unaffected politicians at the State level is a slap in the face to the citizens of Dayton who clearly voiced their opinion on the issue." (Boldface and italics sic.)

### Mandamus Complaint

{¶ 22} Relator Randy Beane is employed as a police lieutenant by the city. Beane is the president of relator Captain John C. Post Lodge No. 44 of the Fraternal Order of Police ("FOP"), which is the certified bargaining representative of certain police officers employed by the city. Beane currently resides within Dayton in accordance with Section 102, Article X of the Dayton Charter, but like many other officers represented by the FOP, he wishes to live outside the city and still retain his job.

{¶ 23} Almost nine months after R.C. 9.481 was enacted and over five months after the statute became effective, on October 17, 2006, Beane and the FOP filed this action for extraordinary relief against respondents, Dayton, its mayor, its law director, its commission and the commissioners, and its civil service board and board members. Relators requested a writ of mandamus to compel respondents to implement S.B. 82 and R.C. 9.481 and to permit Beane, FOP members, and similarly situated city emergency/safety-force employees to live outside the city and be entitled to continued employment with the city. On November 9, respondents filed a motion to dismiss. Respondents raised several defenses,

including that relators' complaint failed to comply with the personal-knowledge affidavit requirement of S.Ct.Prac.R. X(4)(B). Relators' response to the motion to dismiss was due on November 20, but none was filed.

{¶ 24} On December 19, 2006, relators filed a motion to amend their complaint to include an amended affidavit to attest to personal knowledge of the allegations contained in the complaint.

{¶ 25} This cause is now before this court for our S.Ct.Prac.R. X(5) determination.

## S.Ct.Prac.R. X(5) Standard

{¶ 26} We must now determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. Dismissal is required if it appears beyond doubt, after presuming the truth of all material factual allegations of the complaint and making all reasonable inferences in relators' favor, that relators are not entitled to the requested extraordinary relief in mandamus. *State ex rel. Morenz v. Kerr,* 104 Ohio St.3d 148, 2004-Ohio-6208, 818 N.E.2d 1162, ¶ 13. If, however, after so construing relators' complaint, it appears that their mandamus claim may have merit, an alternative writ should be granted and a schedule for the presentation of evidence and briefs should be issued. *State ex rel. Highlander v. Rudduck,* 103 Ohio St.3d 370, 2004-Ohio-4952, 816 N.E.2d 213, ¶ 8.

{¶ 27} With these standards in mind, relators' mandamus claim is next considered.

{¶ 28} " 'In general, if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction.' " *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 537, 757 N.E.2d 319, quoting *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704. "[W]e must examine [relators'] complaint 'to see whether it actually seeks to prevent, rather than to compel, official action.' " *State ex rel. Cunningham v. Amer Cunningham Co., L.P.A.* (2002), 94 Ohio St.3d 323, 324, 762 N.E.2d 1012, quoting *State ex rel. Stamps v. Montgomery Cty. Automatic Data Processing Bd.* (1989), 42 Ohio St.3d 164, 166, 538 N.E.2d 105.

{¶ 29} Although couched in affirmative language, the manifest objectives of relators' mandamus claim are (1) a declaratory judgment that R.C. 9.481 is constitutional and prevails over conflicting municipal charter residency requirements for municipal employees and (2) a prohibitory injunction preventing Dayton from applying the municipal residency requirements. Therefore, we lack jurisdiction over relators' mandamus claim. See *State ex rel. Mackey v. Blackwell,* 106 Ohio St.3d 261, 2005-Ohio-4789, 834 N.E.2d 346, ¶ 14–16.

{¶ 30} Similarly, in *State ex rel. Sheppard v. Cleveland*, 108 Ohio St.3d 1506, 2006-Ohio-1329, 844 N.E.2d 852, we dismissed an original action for a writ of mandamus to compel the city of Cleveland and certain city officials to comply with R.C. 9.481 and permit city employees to continue working for the city even if they lived outside the city on and after the effective date of the statute. See Relators' Petition and Verified Complaint for Writ of Mandamus, 2006 WL 565043.

{¶ 31} Moreover, mandamus is not appropriate if there is a plain and adequate remedy in the ordinary course of law. *State ex rel. Vaughn Indus., L.L.C. v. Ohio Dept. of Commerce*, 109 Ohio St.3d 482, 2006-Ohio-2994, 849 N.E.2d 31, ¶ 18. The alternate remedy must be complete, beneficial, and speedy in order to be an adequate remedy at law. *State ex rel. Ullmann v. Hayes*, 103 Ohio St.3d 405, 2004-Ohio-5469, 816 N.E.2d 245, ¶ 8. Relators here have an adequate remedy in the ordinary course of law by an action for declaratory judgment and prohibitory injunction in the Montgomery County Court of Common Pleas, seeking (1) a judgment declaring that R.C. 9.481 is constitutional and supersedes Dayton's conflicting charter residency requirement and (2) an injunction preventing Dayton from applying the city's charter requirement conditioning municipal employment on city residency. Relators have not sufficiently alleged why this alternative would not provide complete, beneficial, and speedy relief. They could have brought such an action several months ago when R.C. 9.481 took effect.

{¶ 32} Furthermore, " '[c]onstitutional challenges to legislation are generally resolved in an action in a common pleas court rather than in an extraordinary writ action.' " *State ex rel. Satow v. Gausse–Milliken*, 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, ¶ 18, quoting *Rammage v. Saros*, 97 Ohio St.3d 430, 2002-Ohio-6669, 780 N.E.2d 278, ¶ 11.

{¶ 33} In addition, " '[w]here parties to a mandamus action are also parties, or may be joined as parties, in a previously filed declaratory judgment action involving the same subject matter, a court, in the exercise of its discretion, may refuse to issue a writ of mandamus.' " *State ex rel. Gaydosh v. Twinsburg* (2001), 93 Ohio St.3d 576, 579, 757 N.E.2d 357, quoting *State ex rel. Bennett v. Lime* (1978), 55 Ohio St.2d 62, 9 O.O.3d 69, 378 N.E.2d 152, syllabus. As noted by the respondents, relators could seek to intervene in an action for declaratory judgment and prohibitory injunction, currently pending in Montgomery County, which raises the same issues. See *Dayton v. State*, Montgomery C.P. No. 06 CV 3507.

{¶ 34} Finally, relators failed to file a timely memorandum in opposition to respondents' motion to dismiss.

{¶ 35} Based on the foregoing, we grant respondents' motion and dismiss the cause. Because we lack jurisdiction, we cannot address the merits of relators' claim. Our disposition renders relators' motion to amend their complaint moot.

Cause dismissed.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR, O'DONNELL and CUPP, JJ., concur.

PFEIFER and LANZINGER, JJ., concur in judgment only.

---

Doll, Jansen & Ford and Susan D. Jansen, for relators.

Green & Green, Thomas M. Green, Jane M. Lynch, and Stacy M. Wall, for respondents.