THE STATE EX REL. ZEIGLER *v.* ZUMBAR.

[Cite as *State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939.]

*Quo warranto — R.C. 321.38 — Removal of county treasurer — Section 38, Article II, Ohio Constitution — R.C. 321.38 violates Section 38, Article II by authorizing county commissioners to remove county treasurer from office without complaint and hearing — Writ granted.*

(No. 2010-1570 — Submitted March 23, 2011 — Decided June 23, 2011.)

IN QUO WARRANTO.

_____

SYLLABUS OF THE COURT

Because R.C. 321.38 does not require a complaint and hearing before authorizing a board of county commissioners to remove a county treasurer, it is incompatible with Section 38, Article II of the Ohio Constitution, and thus is unconstitutional on its face.

_____

LANZINGER, J.

{¶ 1} In this original action in quo warranto, relator, Gary D. Zeigler, seeks to oust respondent, Alexander A. Zumbar, from the office of Stark County treasurer and to be reinstated to that office. Because Zeigler has established his entitlement to the requested extraordinary relief, we grant the writ.

**I. Case Background**

{¶ 2} Zeigler was elected Stark County treasurer in November 2008. During Zeigler's tenure as treasurer, his chief deputy, Vincent Frustaci, was alleged to have stolen up to $2,964,560 from the county treasury. Upon notice of the allegation, the state auditor initiated a special audit of the treasurer's office. In the special audit report, the state auditor found shortages in the county treasurer's

depository balance due to unauthorized withdrawals. The shortage amounted to $2,964,560. On June 25, 2010, Frustaci pleaded guilty to charges filed against him in the United States District Court for the Northern District of Ohio alleging that he had stolen $2,464,989 from the Stark County treasurer's office.

{¶ 3} In July 2010, the Stark County auditor requested that the Stark County prosecuting attorney institute a suit against Zeigler pursuant to R.C. 321.37 to recover the stolen funds. The prosecutor then requested by letter that Zeigler repay the $1.5 million deficit in the treasurer's accounts that would remain after all other sources of repayment had been exhausted. The prosecutor noted that although there was no evidence of Zeigler's culpability regarding the stolen funds, he was personally liable by statute, and he advised Zeigler that a civil suit would be considered if Zeigler failed or refused to respond.

{¶ 4} Zeigler did not respond. On July 28, a complaint was filed in the Summit County Court of Common Pleas, in the name of the office of the Stark County treasurer, the state of Ohio, and the board of commissioners for recovery of the money from Frustaci, Zeigler, and sureties on bonds given by Zeigler for his term of office as county treasurer.[1] The board of commissioners issued notices for special meetings to be held on August 2 and 12, 2010, "[t]o consider the status of the Treasurer's Office in light of [the] pending action by the Stark County Prosecutor pursuant to [R.C.] 321.37." The common pleas court, however, granted a temporary restraining order on behalf of Zeigler, who wished to maintain the status quo pending resolution of a constitutional challenge that he intended to bring to R.C. 321.38 insofar as it permits the removal of the county treasurer by the board of commissioners upon institution of a suit under R.C. 321.37. Zeigler then filed an action in the common pleas court for declaratory

---

1. The complaint alleged that two bonds were issued for Zeigler, one by Continental Casualty Company in the sum of $250,000 and one by Hartford Fire Insurance Company in the same amount.

and injunctive relief, seeking to prevent the board of commissioners from invoking R.C. 321.38 to remove him from office, on grounds that R.C. 321.38 is unconstitutional. The court consolidated the case with the prosecutor's recoupment action under R.C. 321.37.

{¶ 5} On August 18, 2010, the board of commissioners adopted a resolution to hold a special meeting and hearing on August 23 to "consider the Special Audit Report and the Complaint," "determine whether GARY D. ZEIGLER, Stark County Treasurer, has failed to make a settlement or to pay over money as prescribed by law," and "determine whether the Board should remove such Stark County Treasurer pursuant to R.C. 321.38." The board further specified that copies of the resolution, the special audit report, and the prosecutor's complaint filed under R.C. 321.37 would be delivered to Zeigler and that he would be "afforded an opportunity to appear, with or without counsel, and be heard at the aforesaid special meeting and hearing."

{¶ 6} Zeigler declined to attend the special meeting and hearing on grounds that "R.C. § 321.38 is unconstitutional and that no action taken by the Stark County Commissioners to hold a special meeting or otherwise attempt to remedy the due process deficiencies contained in the statute correct[s] the constitutional shortfalls." Zeigler additionally stated that four days' notice "is insufficient time to allow for a proper constitutional hearing."

{¶ 7} On the date of the special hearing, August 23, the common pleas court declared that "R.C. 321.38 when read *in pari materia* with R.C. 321.37 does not violate Article II, Section 38, of the Ohio Constitution," that the "due process clause of the Fourteenth Amendment to the United States Constitution is not applicable to the within action," and that "[a]ny due process issue under either the United States or Ohio Constitution[] is resolved by the Board's resolution of August 18, 2010." The court denied Zeigler's motions for injunctive relief. Zeigler appealed from the common pleas court's order, and the appeal is currently

stayed pending the resolution of this quo warranto case. *Stark Cty. Treasurer v. Frustaci* (Dec. 8, 2010), 5th Dist. No. 2010CA00244.

{¶ 8} On that same day, the board of commissioners conducted an evidentiary hearing at which the board found: "the evidence presented demonstrated that there is no factual question that * * * $2,964,560 * * * came into the county treasury, and that said money is missing, * * * that Treasurer Zeigler failed to make settlement or to pay over money that is prescribed by law," and that "the evidence showed that the theft from the Stark County Treasury was not an isolated incident, but occurred over a long period of time during Treasurer Zeigler's tenure." The board further found that "although Treasurer Zeigler committed no crime or malfeasance, [he] fail[ed] to appear and be heard about procedures he has implemented to restore the public's confidence that their tax dollars are protected in the future." At the conclusion of the hearing, the board voted to remove Zeigler immediately from the office of Stark County treasurer pursuant to R.C. 321.38. The board appointed Deputy Treasurer Jaime Allbritain to be acting county treasurer.

{¶ 9} On September 7, 2010, Zeigler filed this action for a writ of quo warranto to oust Allbritain and to be reinstated to the office of Stark County treasurer. Allbritain filed an answer and a motion for judgment on the pleadings, but Kenneth N. Koher, appointed as Stark County treasurer on September 20, was substituted as respondent. The motion for judgment on the pleadings was denied, and an alternative writ was granted by this court. *State ex rel. Zeigler v. Koher*, 127 Ohio St.3d 1443, 2010-Ohio-5762, 937 N.E.2d 1034.

{¶ 10} A November 2, 2010 election was held to fill Zeigler's unexpired term, and Koher was defeated by Alexander A. Zumbar, who is currently serving as the Stark County treasurer. He is thus automatically substituted as the respondent in this case. See S.Ct.Prac.R. 10.2 and Civ.R. 25(D)(1). The parties

have submitted evidence and briefs, and oral argument was conducted on March 23.

{¶ 11} This cause is now before the court for our consideration of the merits of Zeigler's quo warranto claim.

## II. Analysis

### A. *Mootness and Laches*

{¶ 12} Respondent asserts that we need not address the merits of Zeigler's quo warranto claim because it is both moot and barred by laches. Since Zeigler was removed from the office of county treasurer on August 23, 2010, there have been three successors to the office, with the last one, Zumbar, being elected to fill Zeigler's unexpired term.

{¶ 13} The fact that there have been three successors since Zeigler's removal does not bar his quo warranto claim. If this were true, an appointing authority could insulate its improper removal of a public officer by appointing multiple persons to the office in quick succession. We decline to interpret the pertinent law to sanction such an unreasonable result.

{¶ 14} Respondent relies upon cases distinguishable from this one. In the first, a court of appeals held that an appointee's quo warranto claim to the office of city law director was rendered moot by the expiration of the law director's term of office. *State ex rel. Paluf v. Feneli* (1995), 100 Ohio App.3d 461, 654 N.E.2d 360. However, the term of office from which Zeigler claims improper removal has not expired. See R.C. 321.01 ("A county treasurer shall be elected quadrennially in each county, who shall hold his office for four years from the first Monday of September next after his election"). Because Zeigler was most recently elected in November 2008, his term would expire in September 2013.

{¶ 15} The second of respondent's cases involved an appointee in the classified civil service who had completed a probationary period. *State ex rel. Newell v. Jackson*, 118 Ohio St.3d 138, 2008-Ohio-1965, 886 N.E.2d 846. We

held that "[t]o be entitled to a writ of quo warranto to oust a good-faith appointee, a relator must take affirmative action by either filing a quo warranto action or an injunction challenging the appointment before the appointee completes the probationary period and becomes a permanent employee." Id. at ¶ 11. This is not a similar case. Moreover, Zeigler filed the action for declaratory and injunctive relief challenging R.C. 321.38 *before* he was removed from office and filed this quo warranto action challenging his removal only 15 days after his ouster.

{¶ 16} Thus, Zeigler has presented his quo warranto claim in a timely fashion, and the claim is neither moot nor barred by laches. Respondent's ability to defend against the claim has not been prejudiced by the minimal lapse of time that has occurred. See *State ex rel. King v. Summit Cty. Council*, 99 Ohio St.3d 172, 2003-Ohio-3050, 789 N.E.2d 1108, ¶ 29 (the prejudice required for laches is generally established by showing a respondent's inability to defend against a claim due to the passage of time).

*B. Lack of Adequate Remedy in the Ordinary Course of Law*

{¶ 17} "Extraordinary writs like quo warranto provide extraordinary, not alternative remedies, and they will not lie where there exists an adequate remedy in the ordinary course of the law." *State ex rel. Johnson v. Talikka* (1994), 71 Ohio St.3d 109, 110, 642 N.E.2d 353. "The alternate remedy must be complete, beneficial, and speedy in order to be an adequate remedy at law." *State ex rel. Beane v. Dayton*, 112 Ohio St.3d 553, 2007-Ohio-811, 862 N.E.2d 97, ¶ 31.

{¶ 18} Respondent claims that Zeigler had two adequate remedies in the ordinary course of law, one by way of appeal from the common pleas court judgment in his action for declaratory and injunctive relief and one by administrative appeal from the board of commissioners' removal order.

{¶ 19} An appeal from the common pleas court judgment in the action for declaratory and injunctive relief, however, is not an adequate remedy because it would not result in respondent's ouster. We have already rejected a similar

argument. See *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, ¶ 20.

**{¶ 20}** Zeigler also may not appeal from his removal as treasurer if the proceedings were not quasi-judicial. *State ex rel. McArthur v. DeSouza* (1992), 65 Ohio St.3d 25, 27, 599 N.E.2d 268. We have held that "[p]roceedings of administrative officers and agencies are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence." *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562, paragraph two of the syllabus. R.C. 2506.01 provides for administrative appeals only from quasi-judicial proceedings. *State ex rel. Lorain v. Stewart*, 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184, ¶ 55.

**{¶ 21}** No statute required the board to conduct a hearing resembling a judicial trial before it removed him from the office of county treasurer pursuant to R.C. 321.38. The mere fact that the board of commissioners gave Zeigler limited notice of the August 23 hearing and conducted the hearing in a manner resembling a judicial trial does not mean that it exercised the quasi-judicial authority required to make the removal order appealable under R.C. 2506.01. The *requirement* of conducting a quasi-judicial hearing is the key point of exercising that authority. *State ex rel. Scherach v. Lorain Cty. Bd. of Elections*, 123 Ohio St.3d 245, 2009-Ohio-5349, 915 N.E.2d 647, ¶ 23 (fact that board of elections held a protest hearing resembling a judicial trial even though not required to do so did not constitute the exercise of quasi-judicial authority).

**{¶ 22}** Zeigler has therefore established that he lacks an adequate remedy in the ordinary course of law.

### C. Claim for Ouster and Reinstatement

**{¶ 23}** To be entitled to the writ of quo warranto, the relator must establish that the office is being unlawfully held and exercised by respondent and that relator is entitled to the office. *Newell*, 118 Ohio St.3d 138, 2008-Ohio-1965,

886 N.E.2d 846, ¶ 6. "[I]t is well settled that 'quo warranto is the exclusive remedy by which one's right to hold a public office may be litigated.' " *Deiter*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, at ¶ 20, quoting *State ex rel. Battin v. Bush* (1988), 40 Ohio St.3d 236, 238-239, 533 N.E.2d 301. Zeigler claims that he is entitled to the writ because the statute that the board of commissioners relied on to remove him from office, R.C. 321.38, is facially unconstitutional because it violates Section 38, Article II of the Ohio Constitution.

{¶ 24} We are first to presume the constitutionality of lawfully enacted legislation, and before a statute is struck down, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. Zeigler's challenge is a facial challenge to the constitutionality of R.C. 321.38, and so he must establish that there exists no set of circumstances under which the statute would be valid. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37.

{¶ 25} In evaluating Zeigler's facial challenge to R.C. 321.38, we look to the statute's text. See *Global Knowledge Training, L.L.C. v. Levin*, 127 Ohio St.3d 34, 2010-Ohio-4411, 936 N.E.2d 463, ¶ 18; *Washington State Grange v. Washington State Republican Party* (2008), 552 U.S. 442, 449-450, 128 S.Ct. 1184, 170 L.Ed.2d 151 ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements").

{¶ 26} We are also guided by the rule that statutes authorizing the removal of an incumbent from public office are quasi-penal in nature and should be strictly construed. See *State ex rel. Ragozine v. Shaker*, 96 Ohio St.3d 201, 2002-Ohio-3992, 772 N.E.2d 1192, ¶ 15. "Ohio law disfavors the removal of duly elected officials." *In re Removal of Sites*, 170 Ohio App.3d 272, 2006-Ohio-6996, 866 N.E.2d 1119, ¶ 16. Thus, "[a]n elective public official should not be removed except for clearly substantial reasons and conclusions that his further

presence in office would be harmful to the public welfare." *State ex rel. Corrigan v. Hensel* (1965), 2 Ohio St.2d 96, 100, 31 O.O.2d 144, 206 N.E.2d 563; *Sites* at ¶ 16.

{¶ 27} With these principles guiding our analysis, we consider Zeigler's claim that R.C. 321.38 is unconstitutional.

### D. The Statutes and the Ohio Constitution

{¶ 28} The statute authorizing ouster of a treasurer who cannot pay over money due the county treasury relies on another for its foundation.

{¶ 29} Under R.C. 321.37, "[i]f the county treasurer fails to make a settlement or to pay over money as prescribed by law, the county auditor or board of county commissioners shall cause suit to be instituted against such treasurer and his surety or sureties for the amount due, with ten per cent penalty on such amount, which suit shall have precedence over all other civil business."

{¶ 30} R.C. 321.38 provides, "*Immediately on the institution of the suit* mentioned in section 321.37 of the Revised Code, the board of county *commissioners may remove such county treasurer* and appoint some person to fill the vacancy created." (Emphasis added.)

{¶ 31} Section 38, Article II of the Ohio Constitution, however, speaks plainly about the laws to be enacted for the "prompt removal from office" of officers "upon complaint and hearing," in addition to impeachment or other removal methods authorized by the Constitution:

{¶ 32} "Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the general assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution."

{¶ 33} R.C. 321.38 is incompatible with Section 38, Article II of the Ohio Constitution because the statute does not require a complaint and hearing before a board of county commissioners is authorized to remove a county treasurer. To the contrary, R.C. 321.38 purports to give authority to the board to remove the county treasurer *immediately* upon institution of the R.C. 321.37 recoupment suit. There is no opportunity for a complaint and hearing, much less a decision on the merits of the treasurer's removal in the R.C. 321.37 case. An R.C. 321.37 recoupment complaint cannot be characterized as providing the county treasurer notice of the potential of removal from office, because the complaint itself need not seek removal.

{¶ 34} In this case, the complaint against Zeigler under R.C. 321.37 did not request his removal from office. Furthermore, the board of commissioners' initial two notices for meetings did not mention removal and also did not amount to a constitutionally sufficient complaint. Even the board's August 18 notice of a hearing to consider Zeigler's removal provided him with only a few days' notice. Zumbar's argument that Zeigler received the requisite complaint and hearing lacks merit.

{¶ 35} We have considered a comparable statute and have concluded that it violated Section 38, Article II of the Ohio Constitution because it authorized removal of the county treasurer from office without the complaint and hearing required by Section 38. *State ex rel. Hoel v. Brown* (1922), 105 Ohio St. 479, 488, 138 N.E. 230. At the time, G.C. 2713 provided, "On examination of the county treasury, if it appears by the report of the examiner or examiners that an embezzlement has been committed by the county treasurer, the county commissioners shall forthwith remove the treasurer from office, and appoint some person to fill the vacancy thereby created." The prosecuting attorney had instituted a quo warranto action to oust a county treasurer from office who had been ordered removed by the board of county commissioners pursuant to the

10

statute because of embezzlement. We recognized the import of the constitutional provision and the deficiency of the removal statute:

{¶ 36} "It should be noted that this section clearly and concretely recognizes Ohio's obligation to the cardinal doctrines included within this phrase, 'due process of law.' It must have been clearly intended that a 'complaint and hearing' should be allowed 'to all officers.' * * *

{¶ 37} " * * *

{¶ 38} "It may be said that this is not a criminal trial. True. But it is no less a condemnation for a crime, followed by a penalty, the ousting of a man from public office by three men, servants of the people it is true, but hardly qualified to put out of office without a hearing a public official who has been put into office by the majority votes of the sovereign people.

{¶ 39} "What the Constitution grants, no statute can take away." *Hoel*, 105 Ohio St. at 487, 138 N.E. 230.

{¶ 40} In a similar fashion, R.C. 321.38 authorizes the removal of elected county treasurers from office by county commissioners without the due process protections of a complaint and hearing that are required by Section 38, Article II of the Ohio Constitution. R.C. 321.38 is thus irreconcilable with the constitutional provision.

*E. Lack of Evidence of Misconduct*

{¶ 41} As respondent readily concedes, contrary to the Constitution's requirement of "misconduct involving moral turpitude" or "other cause provided by law," R.C. 321.38 "does not require or even contemplate any finding of moral turpitude or embezzlement or any other human failing." And unlike the public officials ordered removed in *Stebbins v. Rhodes* (1978), 56 Ohio St.2d 239, 10 O.O.3d 387, 383 N.E.2d 605, and *Hoel*, there is no evidence of any misconduct or comparable cause to justify Zeigler's removal from office. In its August 23 decision, the board of commissioners specifically concluded that Zeigler had

"committed no crime or malfeasance." Removal from office under R.C. 321.38 thus is not justified by "clearly substantial reasons and conclusions that [the treasurer's] further presence in office would be harmful to the public welfare." *Corrigan*, 2 Ohio St.2d at 100, 31 O.O.2d 144, 206 N.E.2d 563. For example, R.C. 321.38 seems to go so far as to allow a board of commissioners to summarily remove a county treasurer upon institution of a suit to recoup a nominal amount that the treasurer could not account for, even if the treasurer paid that money or the money was accounted for after the suit was instituted. R.C. 321.38, like the statute we held unconstitutional in *Hoel,* is irreconcilable with Section 38, Article II of the Ohio Constitution.

{¶ 42} Respondent argues that any defect in the plain language of R.C. 321.38 can be cured by requiring a complaint and hearing before a board of commissioners is authorized to remove a county treasurer. In essence, Zumbar requests that we rewrite the statute to require a complaint and hearing when, as written, the statute permits removal "[i]mmediately" upon the institution of an R.C. 321.37 recoupment suit. We cannot rewrite the statute in this manner "because doing so would condone a * * * remaking of an unconstitutional statute into a new statute not subject to the legislative process." *People v. Taylor* (2007), 9 N.Y.3d 129, 153, 848 N.Y.S.2d 554, 878 N.E.2d 969.

{¶ 43} Based on the foregoing, Zeigler has satisfied the burden to establish that R.C. 321.38 is unconstitutional on its face. It is important to recognize that although Zumbar was elected to the office of treasurer in November 2010, that midterm election occurred only because of Zeigler's improper removal. Because we hold today that R.C. 321.38 is unconstitutional, the removal of Zeigler violated Section 38, Article II of the Ohio Constitution, and he is entitled to serve the remainder of his elected term, set to expire in September 2013.

### III. Conclusion

{¶ 44} We hold that because R.C. 321.38 does not require a complaint and hearing before authorizing a board of county commissioners to remove a county treasurer, it is incompatible with Section 38, Article II of the Ohio Constitution, and thus is unconstitutional on its face. The process used by the county commissioners to remove Zeigler from office did not comply with Section 38, Article II, and therefore Zeigler has established that he is entitled to the office of county treasurer and that respondent is unlawfully holding that office. Consequently, we grant the writ of quo warranto to oust Zumbar from the office of Stark County treasurer and to reinstate Zeigler.

Writ granted.

O'CONNOR, C.J., and LUNDBERG STRATTON, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 45} As the majority relates, to be entitled to the writ of quo warranto, the relator must establish that the office is being unlawfully held and exercised by respondent and that relator is entitled to the office. *State ex rel. Newell v. Jackson*, 118 Ohio St.3d 138, 2008-Ohio-1965, 886 N.E.2d 846, ¶ 6. The relator and the majority spend much of their time addressing the second requirement, but precious little on the first. Zeigler may well have a cause of action against his county commissioners. But that is not Zumbar's fight. Zeigler alleges nothing in Zumbar's qualifications or in the mechanics of the election that would make Zumbar's holding of the office unlawful.

{¶ 46} The focus of a quo warranto case needs to be the officeholder, not the former officeholder. In *State ex rel. Hoel v. Brown* (1922), 105 Ohio St. 479, 138 N.E. 230, the star case relied upon by the majority, the county prosecutor sought a writ of quo warranto to force the removal of the county treasurer who

had been ordered removed by the county commissioners. That treasurer refused to leave office. This court found that G.C. 2713 could not provide the authority to oust him, because it was unconstitutional. Surely in this case, had Zeigler not agreed to leave office, the county could have brought a quo warranto case against him, and this court may well have held that R.C. 321.38 could not provide the authority to remove Zeigler from office. But that is not this case.

{¶ 47} Zeigler left his office, creating a vacancy. Zeigler did not attempt to prohibit the election from occurring that would provide his permanent replacement. He does not allege any impropriety in the nomination of Zumbar, nor in the election itself. He does not allege that Zumbar is somehow deficient in his qualification for office.

{¶ 48} Zumbar lawfully holds office. Whether Zeigler was improperly removed from office is a matter between him and the county commissioners. It is not something solvable by a writ of quo warranto. The world has moved on.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Wickens, Herzer, Panza, Cook & Batista Co., Matthew W. Nakon, Joseph E. Cirigliano, and Amy L. DeLuca, for relator.

John D. Ferrero, Stark County Prosecuting Attorney, and Ross A. Rhodes and Kathleen O. Tatarsky, Assistant Prosecuting Attorneys, for respondent.

_____