[Cite as *Osburn Towing v. Akron*, 2013-Ohio-5409.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

OSBURN TOWING

     Appellee

     v.

CITY OF AKRON

     Appellant

C.A. No.    26633

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV2012-01-0181

DECISION AND JOURNAL ENTRY

Dated: December 11, 2013

---

BELFANCE, Presiding Judge.

{¶1} The City of Akron appeals the decision of the Summit County Court of Common Pleas. For the reasons set forth below, we reverse.

I.

{¶2} Akron City Code ("A.C.C.") 70.52 divides the city into seven towing districts, each with a designated towing company and impound lot. Prior to 2011, Osburn Towing, Inc. was the designated towing company for District Six with a designated motor vehicle pound location at 2491 11th Street SW. Eventually, Osburn Towing sold the property where it had been operating and continued to tow vehicles by taking them to the District Three impound lot. In December 2011, Akron City Council amended A.C.C. 70.52. City Council designated the lot operated by Miller's Towing at 208 West Waterloo Road as the motor vehicle pound for District Six and removed the prior designation of the Osburn Towing lot from the ordinance.

{¶3} Osburn Towing filed an appeal of the ordinance pursuant to R.C. 2506.01 in the Summit County Court of Common Pleas, arguing that it had not received notice that City Council planned to remove it from the motor vehicle pound list and that City Council's decision to do so was unlawful, unreasonable, and against the manifest weight of the evidence. The City moved to dismiss Osburn Towing's appeal for lack of subject matter jurisdiction, arguing that City Council's amendment of the ordinance was a legislative act and, therefore, not subject to review under R.C. 2506.01. The trial court disagreed, reasoning that City Council's removal of Osburn Towing as the designated towing company for District Six was an administrative action. The trial court vacated City Council's amendment to the ordinance.

{¶4} Akron has appealed, raising four assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE COURT OF COMMON PLEAS ERRED IN HOLDING THAT THE DECISION OF THE AKRON CITY COUNCIL WAS SUBJECT TO REVIEW IN AN APPEAL BROUGHT UNDER CHAPTER 2506 OF THE OHIO REVISED CODE.

{¶5} The City argues in its first assignment of error that the amendment of the ordinance to designate a towing location and company for District Six was a legislative act and, therefore, the common pleas court did not have jurisdiction under R.C. 2506.01 to hear Osburn Towing's appeal. We agree.

{¶6} Whether a court possesses subject matter jurisdiction is a question of law that we review de novo. *Galloway v. Firelands Local School Dist. Bd. of Edn.*, 9th Dist. Lorain No. 12CA010208, 2013-Ohio-4264, ¶ 6. R.C. 2506.01 grants jurisdiction to the common pleas court to hear appeals from final orders or decisions of various entities. It provides in pertinent part that

every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code.

R.C. 2506.01(A). Despite the broad language of R.C. 2506.01, the jurisdiction granted by that section does not include jurisdiction to review actions of a legislative body that occur as a result of the exercise of its legislative authority. *Shaheen v. Cuyahoga Falls City Council*, 9th Dist. Summit No. 24472, 2010-Ohio-640, ¶ 15. *See also Berg v. Struthers*, 176 Ohio St. 146, 146-147 (1964). However, "[a] public body essentially legislative in character may act in an administrative capacity[.]" *Donnelly v. Fairview Park*, 13 Ohio St.2d 1 (1968), paragraph one of the syllabus. As such, a final decision as a result of the exercise of administrative power made as a result of a quasi-judicial proceeding is reviewable under R.C. 2506.01. *Shaheen* at ¶ 17. "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly* at paragraph two of the syllabus. In making the determination, it is necessary to examine "the nature of the action taken, rather than the mere form in which it is taken." *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 544 (1998). "If, then, the action of a legislative body creates a law, that action is legislative, but if the action of that body consists of executing an existing law, the action is administrative." *Donnelly* at 4.

{¶7} The central issue presented in this appeal is whether the common pleas court had jurisdiction over Osburn Towing's appeal from City Council's enactment of the amended ordinance in which it designated the location and operator of the District Six impound lot and also removed its prior District Six designation. The answer to that question depends upon

whether the amendment of the ordinance was a legislative or administrative act. The City contends that City Council's enactment of the amended ordinance was not the result of the exercise of administrative authority. Instead, according to the City, the action was a legislative action in which City Council enacted a new rule of law rather than executing an existing law.

{¶8} On the afternoon of December 12, 2011, Akron City Council's Public Safety Committee met. The record of that meeting indicates that the Committee was considering whether to recommend proposed legislation, namely the amended ordinance, to City Council. The Committee heard from numerous individuals, including Mr. Stevens, the person representing Osburn Towing. During the exchange, Mr. Stevens told the committee that Osburn Towing had sold the property where the District Six towing pound had been located as previously designated in A.C.C. 70.52(A). Mr. Stevens also indicated that he had located a property in District Six but that it presently could not function as a towing location because it did not have the proper zoning.

{¶9} Ultimately, the members of the Committee voted to recommend City Council's approval of the amended ordinance. After the meeting of the Committee, a public comment period was held prior to City Council's meeting which Mr. Stevens also attended. The City Council then met that evening and considered whether to adopt the amended ordinance. The record reflects that the members of City Council were advised that the Public Safety Committee had met and had recommended approval of the amended ordinance. City Council then voted to approve adoption of the amended ordinance.

{¶10} Title 7, Article 4 of Akron Code of Ordinances is entitled "Impounding." A.C.C. 70.52(A) "create[s] and establishe[s] motor vehicle pounds" in seven districts within Akron. Pursuant to A.C.C. 70.52(B), "[a]ny change of ownership or location of any of the organizations

mentioned in [A.C.C. 70.52(A)] shall require approval of council." With respect to the ongoing operations of tow operators and impound lots, A.C.C. 70.52(D)-(H) set forth certain operating procedures and equipment requirements for tow companies, and A.C.C. 70.53 sets the fees the tow operators may charge.

{¶11} A.C.C. 70.55(A) establishes "the Police Towing Review Board to review performance and overall operation of authorized police towing companies relating to quality of service, damage to impounded vehicles, police policies or any other conflicts or questions which may arise with regard to the operations of police towing companies." A.C.C. 70.56 provides that

> [a] public hearing shall be held to determine whether a tow company has violated any of the provisions of [A.C.C.] 70.50 through 70.55 or 70.57. Notice of the public hearing shall be sent by certified mail to the tow company's last known address at least thirty days prior to the public hearing. * * * The tow company shall have the right to appear at the public hearing, to be represented by counsel and to examine and cross[-]examine witnesses.

If after the public hearing, the Board determines that the tow company has (1) failed to obey any traffic laws or other laws applicable to tow companies, (2) engaged in improper or discourteous behavior towards the public, (3) failed to comply with the rules and regulations established by the Board pursuant to its powers under A.C.C. 70.55(B), or (4) violated any portion of A.C.C. 70.50-70.55, the Police Review Board "shall impose a fine and/or suspend a license * * *." A.C.C. 70.57(A). A.C.C. 70.58 sets forth the penalties the Board may impose and also provides that, "[f]or third and subsequent offenses, the Board shall refer the matter to City Council for consideration of license revocation." "However, the City Council may immediately revoke a towing license if the offense involves a serious violation which could affect the public's safety." *Id.*

> If the Police Towing Review Board imposes a fine or suspends a license, or City Council revokes any license under [A.C.C.] 70.50 et seq.], it shall, within thirty days, send written notice of its decision by certified mail to the tow company.

This notice shall also state that the tow company shall have the right to appeal an adverse decision to the Court of Common Pleas pursuant to the Provisions of R.C. Chapter 2506.

A.C.C. 70.59.

{¶12} The above provisions establish that Council created an administrative body, the Police Tow Review Board, to oversee the operations of tow operators identified in the ordinance. *See* A.C.C. 70.55. Council also delegated the task of reviewing whether an authorized operator violated any of the provisions of A.C.C. 70.50 et seq. to the Board and granted it the authority to sanction an operator. *See* A.C.C. 70.56-70.58. Council also reserved the right to revoke a license in the event of a serious violation affecting the public's safety. *See* A.C.C. 70.58. A.C.C. 70.59 makes clear that an operator that is either sanctioned by the Police Tow Review Board or by Council is afforded notice and an opportunity to appeal the decision pursuant to R.C. Chapter 2506. By contrast, the ordinance does not contain any provision delegating authority over the designation of a towing location and operator. Instead, the authority of the Police Tow Review Board is limited to reviewing the performance of authorized towing operations.

{¶13} In this case, the trial court determined that the act of amending the ordinance so as to designate a District Six towing location and operator constituted an administrative act amounting to a revocation of the towing license that was appealable by virtue of A.C.C. 70.59. However, under the circumstances of this case, we find that Council's act of amending the ordinance was a legislative act. Although City Council delegated the task of overseeing existing tow operators and had authority to sanction an existing operator for serious violations by revoking its license, City Council did not delegate its authority to select an appropriate tow operation location for the city districts. Although the distinction may at first glance be subtle, it is dispositive. In this case, City Council was faced with the task of identifying a tow operation

location and operator in District Six. The record establishes that Osburn Towing sold the property where Council had originally designated tow operations in District Six and tow operations were not available in that district. Thus, Council was essentially in the same position it was at the inception of adoption of the ordinance—it needed to identify a location and operator for District Six. Notably, unlike the provisions of A.C.C. 70.55 relating to the delegation of the oversight of the ongoing operations of existing authorized towing operations, Council did not delegate its authority to select a location and operator under circumstances where a tow operator ceased operations in a particular district. Thus, under these circumstances, Council exercised its legislative authority to identify the location and operator within District Six.

{¶14} Notwithstanding, the trial court understandably struggled with the lack of clarity as to what constitutes a "revocation" of a tow operator's "license" as these concepts are not defined in the ordinance. However, in examining the entirety of the ordinance, we can discern that the concept of revocation is by its nature related to taking some action (generally punitive) relative to the ongoing performance of the existing operator. Conceptually, license revocation is expected as a result of ongoing violations of the ordinance, and Council's revocation contemplates an "offense" to prompt the revocation. *See* A.C.C. 70.58 ("For third and subsequent offenses, the Board shall refer the matter to City Council for consideration of license revocation.").

{¶15} What is critical here is that the focus of the legislative process undertaken in this case was not to sanction or review Osburn Towing's performance as a tow operator. In other words, had the focus of Council's efforts been to examine Osburn Towing's alleged violations or "offenses" under the ordinance, such would be administrative in nature, and Osburn Towing

would have been entitled to invoke the provisions of A.C.C. 70.59.[1] In examining the record, neither the Safety Committee nor Council conducted proceedings aimed at examining any alleged violation by Osburn Towing under the provisions of the ordinance so as to arrive at a sanction, and this is not a case where Osburn Towing was removed as the operator in District Six while engaging in ongoing operations from the location originally authorized in the ordinance. Instead, City Council was faced with designating a tow operation location in District Six because none existed by virtue of Osburn Towing's sale of the property formerly designated as the authorized District Six tow operation location. Although the common pleas court may have reasoned that Osburn Towing's tow operator license was "revoke[d]" by virtue of Council removing Osburn Towing from the ordinance, it is apparent that City Council never attempted to determine whether Osburn Towing had violated a requirement of the ordinance; instead, it decided where the best location and operator would be for the impound lot for District Six given that none existed. That authority was reserved for the City Council. *See* A.C.C. 70.52(A)-(B).

{¶16} The common pleas court may have examined the amendment of the ordinance which removed Osburn Towing as an operator as distinct from the removal of the designated tow location. However, Council did not originally structure the ordinance so as to create distinct impound locations and distinct tow operators. Instead, Council's selection of a designated tow operation location was intertwined with its designation of the operator.[2] The ordinance

---

[1] In this regard, we note that Osburn Towing, in perfecting its appeal to the Common Pleas Court, attached the legislation approved by City Council to his "Notice of Appeal from Administrative Determination" and further stated that it was appealing the decision of the Police Tow Review Board. However, there was no decision of the Police Tow Review Board in this case.

[2] Notably, in its amended legislation, Council did in some instances allow multiple operators to tow to one designated location within the district. In such a case, the removal of one of the authorized operators from its ongoing operation presents a different scenario. However, such is not the case here.

collectively identified Osburn Towing as both the location and operator in District Six. Furthermore, this is not a case where Osburn Towing was removed from its ongoing operations established under the ordinance; rather, Osburn Towing ceased its own operations from the location designated as the towing location for District Six. Although Osburn Towing was towing to a District Three location, the ordinance had not been amended to designate him as an operator for that location. As such, under the circumstances of this case, Council's amendment of the ordinance was not an act that entailed execution of an existing rule, nor was its legislative process a quasijudicial proceeding. Rather, Council's amendment of the ordinance was an act undertaken pursuant to its legislative authority. Thus, Osburn Towing was not entitled to notice and a hearing prior to Council's amendment of the ordinance.

{¶17}  Accordingly, we conclude that the trial court was without jurisdiction under R.C. 2506.01 to hear the appeal. *See State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, ¶ 21. The City's first assignment of error is sustained.

ASSIGNMENT OF ERROR II

THE COURT OF COMMON PLEAS ERRED WHEN IT CONCLUDED THE ACT OF COUNCIL VIOLATED THE PROCEDURAL DUE PROCESS PROTECTIONS AFFORDED BY THE FOURTEENTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES.

THIRD ASSIGNMENT OF ERROR

IF COUNCIL OF THE CITY OF AKRON PERFORMED AN ADMINISTRATIVE ACT BY REMOVING OSBURN TOWING FROM THE MOTOR VEHICLE POUND LIST, WHICH IT DID NOT, THE COURT OF COMMON PLEAS ERRED WHEN IT VACATED THE ACT OF COUNCIL.

FOURTH ASSIGNMENT OF ERROR

THE COURT ERRED IN REMANDING THE ACT OF COUNCIL TO THE POLICE TOWING REVIEW BOARD OF THE CITY FOR FURTHER PROCEEDINGS.

**{¶18}** Based on our resolution of Akron's first assignment of error, the remaining assignments of error are moot, and, therefore, we decline to address them. *See* App.R. 12(A)(1)(c).

III.

**{¶19}** Because the trial court lacked jurisdiction to hear the appeal pursuant to R.C. 2506.01, its judgment was is a nullity. The judgment of the Summit County Court of Common Pleas is vacated.

Judgment vacated.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

CHERI B. CUNNINGHAM, Director of Law, and DEBORAH M. FORFIA and JOHN R. YORK, Assistant Directors of Law, for Appellant.

WARNER MENDENHALL, Attorney at Law, for Appellee.