[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Martin v. Shabazz*, Slip Opinion No. 2024-Ohio-5450.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5450

THE STATE EX REL. MARTIN ET AL., APPELLANTS, *v.* SHABAZZ ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Martin v. Shabazz*, Slip Opinion No. 2024-Ohio-5450.]

*Quo warranto—Mandamus—Appellants failed to challenge court of appeals' judgment dismissing their quo warranto claim on basis of laches and therefore waived that argument—Court of appeals' determination that appellants could not establish entitlement to city-council offices or that appellees were unlawfully holding the positions affirmed—Court of appeals' denial of request for writ of mandamus ordering continued payment of salaries and benefits as moot affirmed.*

(No. 2024-0123—Submitted October 1, 2024—Decided November 21, 2024.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 112477, 2023-Ohio-4533.

_____

The per curiam opinion below was joined by FISCHER, DONNELLY, STEWART, BRUNNER, and DETERS, JJ. KENNEDY, C.J., and DEWINE, J., concurred in paragraphs 1-17 of the per curiam opinion and otherwise concurred in judgment only, believing that it is unnecessary to consider the grounds for dismissal that the court of appeals relied on other than laches.

**Per Curiam.**

{¶ 1} Appellants, Nathaniel Martin and Mark McClain, appeal an Eighth District Court of Appeals judgment denying them writs of quo warranto and mandamus. Martin and McClain argued that they were improperly removed from their seats on the East Cleveland City Council. The court of appeals disagreed and granted summary judgment in favor of appellees. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Recall Vote Creates Vacancy on East Cleveland City Council

{¶ 2} On November 8, 2022, Ward 3 City Councilor Ernest Smith was recalled in a vote of the East Cleveland voters. On November 29, the Cuyahoga County Board of Elections certified the recall vote. The recall of Smith implicated Section 100 of the East Cleveland Charter, which provides:

> When the office of a member of Council shall become vacant, the vacancy shall be filled by election for the unexpired term by a majority vote of all the remaining members of the Council. If the Council fails within 30 days to fill such a vacancy, the President of Council shall fill it by appointment.

{¶ 3} Appellee Patricia Blochowiak, a city councilor, averred before the court of appeals that on December 17, 2022, she sent out notice of a special meeting, at which the council was to interview applicants to replace Smith as Ward 3 city

2

councilor. The meeting notice erroneously stated that the special meeting would take place on "Monday, December 20, 2022"; the correct date was Monday, December 19, 2022. However, the body of an email sent by Blochowiak to numerous recipients, to which the notice was attached, stated the correct date (though the document attached to her email did not). The council, according to Blochowiak, gave 24 hours' notice of the December 19 special meeting, as required under R.C. 121.22 and in accordance with Section 103.01(b) of the East Cleveland Code of Ordinances. Five applicants for Smith's vacated seat were interviewed at the December 19 special meeting, including appellant McClain and appellee Lateek Shabazz. According to the meeting notes for the December 19 special meeting, Martin, who at that time was the council president, appeared at the meeting but left without participating in the interviews.

### B. Competing Appointments to Office of Ward 3 Councilor

{¶ 4} After the interviews, a special council meeting was scheduled for December 20, 2022. According to Blochowiak's affidavit, Martin had earlier canceled a regular meeting that had been scheduled for that date. Blochowiak averred that she and other council members had expected Martin to delay the council's selection of a Ward 3 councilor "in order to run out the 30-day clock," which would allow him, as council president, to unilaterally appoint a Ward 3 councilor under Section 100 of the East Cleveland Charter.

{¶ 5} The council proceeded with the December 20 special meeting and voted to go into an executive session to discuss the candidates whom the council had interviewed. After returning from the executive session, the council appointed Shabazz as Ward 3 councilor by a three-to-zero vote.[1] Shabazz was sworn in as councilor.

---

1. The East Cleveland City Council normally consists of five members. East Cleveland Charter, § 98. At the time of the three-to-zero vote, one seat was vacant, and Martin was not present.

{¶ 6} In the days following the December 20 meeting, Blochowiak heard rumors that Martin and East Cleveland Mayor Brandon King believed Shabazz's appointment to be improper and would not recognize it. Based on these rumors, the council again appointed Shabazz at a special meeting convened on December 27. Then, at the same meeting, the council voted—with Martin not attending—to reorganize the council and elect appellee Korean Stevenson as the council president to replace Martin.

{¶ 7} Blochowiak averred that Martin recognized neither Shabazz's appointment as councilor nor Stevenson's election as council president and that on December 29, Martin purported to appoint Jacqueline Goodrum as Ward 3 councilor and announced that he had sworn Goodrum into office. Goodrum, however, was ineligible for the office of city councilor under the city charter because she was an employee of the East Cleveland City School District. *See* East Cleveland Charter, § 99 (forbidding employees of the City of East Cleveland or the East Cleveland Board of Education from serving as a member of city council). Upon learning of Goodrum's ineligibility, Martin advised the council on December 30 that he had appointed McClain as Ward 3 councilor instead of Goodrum and had sworn McClain into office.

*C. Council Reappoints Shabazz as Councilor*

{¶ 8} The council convened a regular meeting on January 3, 2023. According to Blochowiak, there was concern over Martin's refusal to acknowledge the council's appointment of Shabazz as councilor and the council's election of Stevenson to replace Martin as president of council, as well as Martin's attempt to appoint McClain as councilor. Out of what Blochowiak described as "an abundance of caution," the council again voted to reorganize the council and to elect Stevenson as council president at the January 3 meeting. McClain attended that meeting as a councilor and cast votes for the reorganization of council and against Stevenson's election as president. Later in the meeting, however, McClain

was asked to vacate his seat. McClain apparently did so, as the minutes indicate that the council voted to swear in Shabazz as Ward 3 councilor for the third time.

### D. Martin Is Removed as Councilor

{¶ 9} In January 2023, Blochowiak began gathering evidence of several instances of alleged wrongdoing by Martin as a councilor. At the council's regular meeting on January 17, Blochowiak requested that the council place on its agenda a resolution charging Martin with misconduct and asked for a hearing to be held on his removal from office for malfeasance. Martin's alleged misconduct included (1) using $1,000 in postage charged to the city's postage meter to mail out campaign literature, (2) accepting gift bags from a local business owner, which Martin then distributed to city residents without reporting the gift bags as an in-kind donation on his campaign-finance reports, (3) signing a letter purportedly on behalf of council, without council's knowledge or approval, in support of the same local business owner's purchase of a Cuyahoga County property, and (4) holding himself out as president of council in public documents after he had been replaced by Stevenson. Martin denied any wrongdoing at the January 17 meeting. Martin contended that he had no advance notice that Blochowiak would bring these accusations against him at the January 17 meeting. The council placed Martin's removal hearing on the agenda for its January 31 meeting.

{¶ 10} Sometime between January 17 and January 19, council president Stevenson convened an investigative committee to determine the validity of the charges against Martin. The investigative committee consisted of Stevenson and council members Shabazz and appellee Juanita Gowdy. According to Blochowiak's affidavit, the day before the meeting at which the council was to consider Martin's removal, Stevenson delivered to Martin a packet of documents that set forth the charges and evidence against him. In a letter to council members dated January 31, Martin requested additional time to review the documents and

prepare a defense to the charges. Martin's request was granted and the hearing on the allegations was rescheduled to February 8.

{¶ 11} The day before the hearing was to occur, Martin again wrote to council members, informing them that he had been advised not to participate in the "charade" of the proceedings against him. Martin questioned the council's compliance with his due-process rights and the city charter, and he also expressed his view that Shabazz was not a valid council member. Because Martin indicated he would not attend the February 8 hearing, the council canceled it and placed the issue of Martin's removal from office on the agenda for a special meeting scheduled for February 14. At the February 14 meeting, which Martin did not attend, the council voted four to zero to remove Martin from office for "misconduct and malfeasance." Less than 30 days later, the council appointed appellee Antwon Billings to replace Martin as councilor.

{¶ 12} On March 8, 2023, Martin and McClain filed a complaint seeking writs of quo warranto and mandamus in the Eighth District Court of Appeals naming appellees Shabazz, Stevenson, Blochowiak, Gowdy, and Billings as respondents. They sought a writ of quo warranto ousting Shabazz and Billings from their respective offices as East Cleveland city councilors. Martin did not challenge his removal as council president in this complaint. Martin and McClain also sought a writ of mandamus ordering appellees to continue paying their salaries and benefits. Martin and McClain also sought an injunction restraining appellees "from their unlawful actions in allowing the appointment of" Shabazz and Billings to the East Cleveland City Council.

{¶ 13} Appellees filed a motion to dismiss, which the court of appeals converted to a motion for summary judgment. Martin and McClain opposed the motion for summary judgment. The court of appeals unanimously granted appellees' motion for summary judgment and denied the writs. 2023-Ohio-4533, ¶ 32-33 (8th Dist.). In rejecting Martin's quo warranto claim, the court of appeals

held that Martin was properly removed as councilor and that Billings was properly appointed as his replacement. *Id.* at ¶ 28-29. Similarly, as to McClain's quo warranto claim, the court of appeals held that Shabazz was properly appointed as Ward 3 councilor and that McClain had failed to demonstrate his entitlement to the office. *Id.* at ¶ 17. In addition, the court of appeals held that the quo warranto claim was barred by laches because of the three-week delay between Martin's removal from office on February 14, 2023, and the filing of the complaint on March 8, 2023. *Id.* at ¶ 30.[2]

{¶ 14} Because neither Martin nor McClain had shown a legal entitlement to office, the court of appeals denied their mandamus claim as moot. *Id.* at ¶ 31. The court also dismissed the injunctive-relief claims for lack of jurisdiction. *Id.* Martin and McClain appealed to this court as of right.

## II. ANALYSIS

### A. Standards of Review

{¶ 15} This court reviews de novo a court of appeals' grant of summary judgment in an extraordinary-writ action. *See State ex rel. Phelps v. McClelland*, 2020-Ohio-831, ¶ 11. To prevail on their claim for a writ of quo warranto, Martin and McClain must establish (1) that the city councilor offices in question are being unlawfully held and exercised by Shabazz and Billings and (2) that Martin and McClain are entitled to those offices. *State ex rel. Zeigler v. Zumbar*, 2011-Ohio-2939, ¶ 23; *see also State ex rel. Halak v. Cebula*, 49 Ohio St.2d 291, 292 (1977), quoting *State ex rel. Heer v. Butterfield*, 95 Ohio St. 428 (1915), paragraph one of the syllabus (relator "'must show not only that he is entitled to the office, but also that it is unlawfully held and exercised by the [respondent] in the action' "). Quo

---

2. The court of appeals cited laches as a basis for both Martin's and McClain's quo warranto claims but referenced only the date of Martin's removal from office as the predicate date for its laches analysis. *See* 2023-Ohio-4533 at ¶ 30 (8th Dist.).

warranto is the exclusive remedy to litigate the right of a person to hold a public office. *State ex rel. Flanagan v. Lewis*, 2014-Ohio-2588, ¶ 12.

### B. Laches

{¶ 16} The court of appeals denied a writ of quo warranto on two grounds: (1) failure to demonstrate entitlement to relief on the merits, 2023-Ohio-4533 at ¶ 11-29 (8th Dist.), and (2) laches, *id.* at ¶ 30. Martin and McClain did not initially challenge the second reason on this appeal and only raised it in their reply brief. By failing to challenge laches, an independent ground for the court of appeals' decision, Martin and McClain have waived any objection to it. *See State ex rel. Dodson v. Ohio Dept. of Rehab. & Corr.*, 2023-Ohio-2263, ¶ 16 (by failing to challenge the court of appeals' holding dismissing his prohibition claim, appellant waived any objection to that aspect of the court of appeals' decision).

{¶ 17} Faced with the argument by appellees that this court may therefore summarily affirm on the basis of laches, Martin and McClain argue in their reply brief that the court of appeals' application of laches to bar their claims was "plain error." But the doctrine of plain error is not applicable here. The doctrine allows an appellate court to recognize an alleged error raised by an appellant on appeal despite the appellant's having not raised an objection to the alleged error in the trial court. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 15-16 (an argument that is not timely raised is deemed forfeited and is reviewed for plain error). But that is not the situation here—rather, laches *was* raised in the court of appeals, but Martin and McClain did not address the court of appeals' laches ruling in their merit brief in this appeal, even though that rationale stood as an independent ground for the court of appeals' denial of the writs, 2023-Ohio-4533 at ¶ 30 (8th Dist.). And Martin and Shabazz's belated attempt to attack the merits of the court of appeals' laches ruling for the first time in their reply brief is not permitted. *See State ex rel. Am. Subcontractors Assn., Inc. v. Ohio State Univ.*, 2011-Ohio-2881, ¶ 40 (appellant is forbidden from raising a new argument in a reply brief).

**{¶ 18}** Accordingly, we could affirm the judgment of the court of appeals on the issue of laches because Martin and McClain have failed to challenge that aspect of the court of appeals' decision on appeal. Nonetheless, in the interests of justice, we consider the merits of Martin and McClain's appeal.

*C. Shabazz's Entitlement to Office*

**{¶ 19}** The quo warranto claims of both Martin and McClain challenge the lawfulness of Shabazz's holding the office of city councilor. McClain argues he is entitled to the council seat Shabazz occupies, and Martin argues that his removal from office was unlawful because of Shabazz's invalid participation in the investigation and council vote in favor of removal.

**{¶ 20}** Martin and McClain first contend that Shabazz is unqualified to hold the office of city councilor. They base their assertion on Section 99 of the East Cleveland Charter, which states: "No person shall be a member of Council who holds any employment with the City of East Cleveland, the East Cleveland Board of Education, *or other incompatible public employment*." (Emphasis added.) Because Shabazz was an employee of the *Cleveland* Municipal School District (*not* the *East Cleveland* board of education) at the time of his appointment to council, Martin and McClain argue that he is disqualified from holding office under Section 99 of the city charter.

**{¶ 21}** Martin and McClain, however, do not offer any argument about the meaning of "incompatible public employment" in Section 99, much less why employment with a school district other than the East Cleveland Board of Education would be incompatible with serving on council. Having offered no argument why Shabazz's employment with a neighboring school district is "incompatible public employment" within the meaning of the East Cleveland Charter, we reject the argument that Shabazz was disqualified from becoming a member of council. *See In re Columbus S. Power Co.*, 2011-Ohio-2638, ¶ 19 ("it is not generally the proper role of this court to develop a party's arguments").

9

{¶ 22} Martin and McClain next argue that Shabazz's appointment was invalid because it resulted from nonpublic meetings of council. They question the validity of three allegedly "non-open" meetings: (1) the December 19, 2022 meeting when candidates for the vacant council office were interviewed, (2) the December 20, 2022 meeting when the council appointed Shabazz, and (3) the December 27, 2022 meeting when Shabazz was reappointed and sworn in as councilor. We reject this argument as well.

{¶ 23} Regarding the December 19 special meeting when candidates for the open council seat were interviewed (including Shabazz and McClain), Martin and McClain point to the fact that the public notice for the meeting erroneously stated that the meeting was to be on "Monday, December 20, 2022" instead of Monday, December 19, 2022. Thus, they argue that no meeting was actually noticed for December 19. But even if we agree that the council held a meeting on December 19 that was not adequately noticed, Martin and McClain have not shown how it matters for their quo warranto claims. There was no official action taken with regard to Shabazz's appointment to council at that meeting. It was not until the December 20 meeting that the council appointed Shabazz.

{¶ 24} Regarding the December 20 and December 27 meetings, Martin and McClain have failed to demonstrate that the court of appeals erred in its conclusion that these were properly noticed public meetings. To support their argument that the December 20 and December 27 special meetings were not properly noticed, Martin and McClain cite the minutes of those meetings as evidence. But nothing on the face of the meeting minutes supports the assertion that the meetings were not properly noticed or otherwise not public. Further, in her affidavit before the court of appeals, Blochowiak testified that both of these meetings were properly noticed special meetings of the council.

{¶ 25} Martin and McClain also contend that notice for the December 20 special meeting was not posted on the council's website, as required by the East

Cleveland Code of Ordinances. *See* East Cleveland Code, § 103.01(c) (notices of special meetings must be posted in same places as notices of regular meeting). But Martin and McClain cite no evidence in the record to support this bald assertion.

{¶ 26} Finally, Martin and McClain attack the council's vote "to swear in Mr. Shabazz for the third time" at the January 3, 2023 council meeting. Appellees assert that the appointment of Shabazz on three occasions in short succession was done "out of an abundance of caution" because of the "machinations" of Martin and Mayor King, who appellees claim refused to acknowledge the legitimacy of Shabazz's appointment. McClain and Martin dispute appellees' characterization, appearing to argue that the January 3 appointment was the *first* attempt to appoint Shabazz validly at a public meeting and therefore cannot override McClain's appointment by Martin to the same office four days earlier.

{¶ 27} The record supports appellees' contention that they appointed and swore in Shabazz for a third time "out of an abundance of caution." Indeed, Martin's actions corroborate appellees' position: Martin purported to appoint McClain to the Ward 3 council seat on December 30, 2022, even though the council had appointed Shabazz to the same seat ten days earlier. Further, the evidence in the record shows that the January 3, 2023 meeting was chaotic, with several disruptions noted in the minutes. McClain began the meeting purporting to sit as a councilor (because Martin purportedly appointed him four days earlier), and McClain cast votes at the meeting until the rest of council asked him to vacate his seat before swearing in Shabazz again. On the record before the court, the contentious situation in the East Cleveland City Council explains the council's reasoning for its swearing in of Shabazz for a third time on January 3, 2023, not any invalidity in his appointment on December 20 or his reappointment on December 27. McClain and Martin have not established Shabazz's lack of entitlement to the office of city councilor.

### D. *McClain Cannot Demonstrate Entitlement to the Office*

**{¶ 28}** McClain contends that he was validly appointed as councilor by Martin, acting as council president, on December 30, 2022, thereby entitling him to the office that Shabazz occupies. As noted above, however, the council validly appointed Shabazz as councilor on December 20. This was within 30 days of the office being vacated by Smith's recall election and was therefore a valid appointment under the East Cleveland Charter. Accordingly, even if Martin were still council president on December 30—which the parties dispute—he could not have appointed McClain as Ward 3 councilor, because Shabazz had already been duly appointed to that office under Section 100 of the East Cleveland Charter. Accordingly, the court of appeals correctly denied McClain's quo warranto claim. *See* 2023-Ohio-4533 at ¶ 17 (8th Dist.).

### E. *Propriety of Martin's Removal from Office*

**{¶ 29}** Martin bases his quo warranto claim on the alleged impropriety of his removal from office. He characterizes his removal from office as "an orchestrated coup" by members of the East Cleveland City Council. And because Martin was improperly removed, his argument goes, Councilor Billings does not have a legitimate entitlement to the office.

**{¶ 30}** Two provisions of the East Cleveland Charter are relevant to Martin's claim. Section 99 governs the removal of a council member and states:

> The Council shall be judge of the election and qualifications of its own members. It may expel any member for gross misconduct, or malfeasance in, or disqualification for office or for conviction of a crime involving moral turpitude while in office; provided, however, that such expulsion shall not take place without the concurrence of four members nor until the delinquent member

12

shall have been notified of the charge against him and given an opportunity to be heard.

East Cleveland Charter, § 99.

{¶ 31} In addition, the East Cleveland Code describes a procedure under which the council may establish an investigatory committee to consider the conduct of "any city official or department of the city government":

(a) Upon a majority vote of members of Council, the President of Council is hereby directed to and shall appoint such committee or committees to perform and conduct any investigation into the conduct or operation of any city official or department of the city government. Upon the appointment of any such committee, the Council President shall notify Council through its Clerk, in writing, of the individual members appointed to such committee, the date that the investigation shall commence and the purpose for which such investigation shall be held.

(b) The President of Council shall be the presiding officer of any committee undertaking any investigation within the city and Council shall appoint and provide the presiding officer with special legal counsel and the counsel so appointed shall advise the presiding officer and Council on any and all questions of law.

(c) All proceedings before any such committee by the Council President shall be recorded and transcribed and the transcripts shall be dealt with in the manner determined by a majority of the committee with regard to the use or release of the evidence, testimony or information contained in the same.

(d) The committee hearings shall be held in such manner and at such times as the presiding officer shall direct and shall be closed door hearings or public hearings as the presiding officer shall direct, based upon the subject matter to be under investigation or discussed by such committee.

(e) For the purposes of securing witnesses, testimony or evidence any such committee shall have the power and authority to issue subpoenas or attachments to compel the attendance of witnesses and/or produce any documents or evidence deemed necessary by such committee.

(f) The committee shall endeavor to conclude any such investigation within 30 days from the date of its appointment and shall advise Council of any conclusions, findings or recommendations in a written report to the entire Council.

East Cleveland Code, § 111.02.

{¶ 32} Martin argues that his removal was invalid because the council did not follow Section 111.02.[3]  Specifically, he contends that the council did not duly appoint a committee under Section 111.02(a) of the East Cleveland Code to investigate his conduct.  Appellees counter, however, that Martin's removal was proper under Section 99 of the East Cleveland City Charter and that nothing in either the city code or the city charter makes an investigative committee a prerequisite to a council member's removal.

{¶ 33} We need not resolve the parties' dispute over the interplay between the city charter and the city code.  As the court of appeals found, the record shows that Stevenson, as council president, empaneled an investigative committee on

---

3. Martin and McClain mistakenly cite Section 100.02 of the East Cleveland Code.  However, the language cited in their merit brief is from Section 111.02.

January 19, 2023, to investigate the allegations of malfeasance that had been delivered to Martin at the council's meeting two days earlier. *See* 2023-Ohio-4533 at ¶ 22, 25 (8th Dist.). And Martin's merit brief does not raise any arguments related to any other aspects of the procedure described in Section 111.02 of the city code.

{¶ 34} Martin also argues that the investigative committee was void ab initio because Shabazz was on it. Because Shabazz "never had the right to hold the office of councilperson," argues Martin, he could not serve on the investigative committee. This argument is without merit for the reasons explained above: Shabazz was validly appointed as a council member on December 20, 2022.

{¶ 35} Martin also argues that his removal was invalid because his conduct did not meet the standard for expulsion under Section 99 of the East Cleveland Charter. Quoting *State ex rel. Corrigan v. Hensel*, 2 Ohio St.2d 96, 100 (1965), Martin argues that "'[a]n elective public official should not be removed except for clearly substantial reasons and conclusions that his further presence in office would be harmful to the public welfare.'" *See also Zeigler*, 2011-Ohio-2939, at ¶ 26.

{¶ 36} Martin was accused of malfeasance based on several claims of misconduct committed while serving as councilor. These included (1) using a city postage machine to mail his campaign literature, thereby charging the city for his campaign expenses, (2) accepting gift bags from a local business owner that Martin used for his campaign, without disclosing the gift bags as an in-kind campaign contribution, (3) supporting that same business owner's purchase of a property by signing a letter on behalf of council without council's approval, and (4) holding himself out as president of council in public documents after he had been replaced by Stevenson. Martin argues that the council removed him based on these "mere allegations" and that the investigation failed to yield sufficient proof of the allegations against him.

**{¶ 37}** Martin's argument is without merit. The evidence of record shows that the board discussed the findings against Martin at the February 14, 2023 council meeting, during which it considered the resolution to remove him as councilor. Councilor Blochowiak noted on the record that the council had before it copies of the "envelopes from the city that [Martin] used for his campaign," which supported a finding of theft in office. She noted that Martin had written a letter in support of a local business's purchase of a building, "acting [as] if all council members agreed." And she also noted that Martin had accepted donations that were not on his finance report and that she had as evidence one of the gift bags that Martin had distributed as campaign items. Thus, the minutes of the February 14 meeting show that the council acted not on "mere allegations," as Martin says, but rather on the evidence it had before it. That evidence corroborated the allegations that had been previously leveled against Martin.

**{¶ 38}** Martin had the opportunity to rebut the allegations and evidence but chose not to do so. Councilor Blochowiak attested that two weeks before the meeting at which the council voted to remove him, council president Stevenson had delivered to Martin "a packet of materials" that contained the evidence compiled since the January 17 meeting at which Martin was first given notice of the charges of misconduct. Martin, however, chose not to respond to the allegations, did not address the evidence against him, and did not appear at the meeting at which the council considered the resolution for his removal. Based on the evidence presented at the February 14 meeting, which Martin failed to rebut, the council had grounds to remove Martin for malfeasance in office.

**{¶ 39}** Finally, the only challenge to Billings's entitlement to hold the office of city councilor is the alleged invalidity of Martin's removal. Because the council validly removed Martin from office, it follows that its appointment of Billings to fill the vacancy was justified. The council appointed Billings within 30 days of Martin's removal, in accordance with Section 100 of the East Cleveland Charter.

16

**{¶ 40}** Accordingly, the court of appeals properly denied Martin's quo warranto claim against Billings. *See* 2023-Ohio-4533 at ¶ 29 (8th Dist.).

*F. Mandamus and Injunction Claims*

**{¶ 41}** Martin and McClain also sought a writ of mandamus ordering the continued payment of their salaries and benefits. They further sought injunctive relief to "restrain[]" appellees from any actions allowing Shabazz and Billings to be in office. Because it denied the quo warranto claims, the court of appeals denied the mandamus claim as moot. *Id.* at ¶ 31. It also dismissed the injunction claims for want of subject-matter jurisdiction. *Id.* Martin and McClain do not address these issues in their appellate briefs. Accordingly, we affirm the denial of the writ of mandamus as moot and the dismissal of the injunctive-relief claims for lack of jurisdiction.

### III. CONCLUSION

**{¶ 42}** For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

_____

Law Office of Charles Tyler Sr. and Charles Tyler Sr., for appellants.

Kenneth D. Myers, for appellees.

_____